Docket Nos.105989, 106592 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES MORRIS, Appellant.–THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JESSE HOLBOROW, Appellant.

*Opinion filed January 22, 2010.*

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

In this consolidated appeal, defendants, James Morris and Jesse Holborow, contest the first-stage dismissals of their respective postconviction petitions. Defendant Morris entered a negotiated plea of guilty in the circuit court of Cook County to two counts of aggravated criminal sexual assault in exchange for concurrent sentences of 30 years. Defendant Holborow entered a negotiated plea of guilty in the circuit court of Livingston County to home invasion with great bodily harm to the victim, theft, and criminal trespass to a vehicle in exchange for the dismissal of four other charges and a 16-year term of imprisonment with concurrent terms of 3 years and 364 days. In their *pro se* postconviction petitions, defendants each asserted

that they were not informed that they would be required to serve terms of mandatory supervised release (MSR) in addition to their sentences and, therefore, did not receive the benefit of their negotiated plea agreements.

The appellate court affirmed in both matters, finding that defendants' postconviction claims were frivolous and patently without merit, as the records showed that defendants received admonishments that substantially complied with Supreme Court Rule 402 (177 Ill. 2d R. 402) and otherwise satisfied due process. *Morris*, No. 1–06–2036 (unpublished order under Supreme Court Rule 23); *Holborow*, 382 Ill. App. 3d 852. We granted leave to appeal and consolidated defendants' cases. 210 Ill. 2d R. 315. For the reasons that follow, we affirm the judgment of the appellate court with respect to both defendants.

## BACKGROUND
### James Morris

Following a negotiated guilty plea, Morris was convicted of two counts of aggravated criminal sexual assault against two different victims, S.B. and C.M. The State's evidence demonstrated that Morris lived in the same apartment building as the victims and was acquainted with each of their husbands. By virtue of that acquaintance, Morris tricked the women into opening their front doors, and then forced his way into their apartments. While inside, he dragged, struck, and sexually assaulted the victims. Morris opted to plead guilty pursuant to a negotiated plea agreement rather than proceed to trial.

At the January 18, 2005, plea hearing, the trial court was advised that an agreement had been reached between the parties. Defense counsel outlined the agreement, stating, "Just so we are clear,***[w]e enter pleas of guilty pursuant to the plea agreement. Pursuant to that agreement all counts on each of those indictments will be nolled. Those pleas are entered with the understanding the sentence would be thirty years in the Illinois Department of Corrections." The trial court then admonished Morris as follows:

> "These are Class X felony charges in the State of Illinois. And Class X felonies in the State of Illinois carry with it possible punishment of six to thirty years in the Illinois Department of

Corrections, plus three years of mandatory supervised release. There is no provisions for periodic imprisonment. There is no provision for periodic probation or conditional discharge. You could be fined up to $10,000 on each of these matters. Do you understand the possible punishment?"

Morris responded, "Yes." After further admonishments, the trial court asked, "Knowing the nature of the charges against you and the possible penalties, the legal rights that you have, do you still wish to plead guilty to aggravated criminal sexual assault in both of these indictments?" Morris answered, "Yes." The trial court accepted Morris' plea and proceeded to sentencing. The trial court did not mention MSR during sentencing, and there was no mention of MSR in the sentencing order. Morris did not file a motion to withdraw his plea and did not file a direct appeal.

In May 2006, Morris filed a *pro se* postconviction petition alleging that his constitutional rights were substantially violated because he contracted with the State to receive a 30-year sentence in exchange for his guilty plea, he was not advised that he would be required to serve three years of MSR in addition to his 30-year sentence, and, therefore, he was not receiving the benefit of his bargain.

The trial court dismissed Morris' postconviction petition, finding that it was frivolous and patently without merit. The trial court found that Morris' claim was belied by the record, which demonstrated that Morris was sufficiently admonished of his MSR obligations. Morris filed a motion to reconsider, which was denied, and then appealed. The appellate court affirmed in an unpublished order, finding that the admonishments given to Morris prior to his guilty plea advised him of the penalty range for the offense, including MSR, and therefore substantially complied with Rule 402 and this court's precedent. *Morris*, No. 1–06–2036 (unpublished order under Supreme Court Rule 23). Morris now appeals.

Jesse Holborow

Holborow entered a plea of guilty to home invasion with great bodily harm to the victim, theft, and criminal trespass to a vehicle. The State's evidence showed that Holborow and two codefendants unlawfully entered the home of the victim, 70-year-old Bernard

-3-

Harris, and proceeded to beat him and stab him before taking his beer and his van without permission. As a result of this attack, the victim became wheelchair bound and cognitively deficient and was no longer able to care for himself.

At the commencement of the plea hearing, the trial court stated:

"Mr. Holborow, I have a written plea agreement before me indicating that you don't want a jury trial. It indicates you are going to plead guilty to seven counts against you. And you are going to receive on Count 1, home invasion, a 16-year-sentence. *** There would be a finding of great bodily harm to the victim, meaning that you would have to serve 85 percent of your sentence. *** Sixteen times 85 percent is 13.6 years. So that is what you are going to have to serve. You will get credit for whatever time you have been in jail. Now, there would be some court costs to pay. $200 DNA fee. There would be restitution of $5,643.59. *** And you have to make yourself available and provide truthful testimony in the case of each co-defendant. *** Is that what you want to do, Mr. Holborow?"

Defendant responded, "Yes."

The trial court continued:

"Now, it is important that you understand with respect to Count 1, the home invasion, that is a Class X felony. And the law says that if this were handled by other than a plea agreement, you could get anywhere from six to 30 years in prison, plus three years mandatory supervised release. You are not eligible for probation, periodic imprisonment, or conditional discharge. If you were found guilty, you would have to get a minimum of six years, and you could get as much as 30. And with great bodily harm, you have to serve 85 percent of your time. So do you understand what the possibilities there are, if this were handled by other than a plea agreement?"

Holborow confirmed that he understood, and the trial court continued:

"Now, Count 2, aggravated battery of a senior citizen; *** Count 2 is a Class 2 felony.*** That is the one where you are

charged with knowingly causing great bodily harm to Bernard Harris, in that he was a senior citizen, an individual 60 years of age or older. *** And you are eligible there for an extended term. Since that is a Class 2, an extended term is seven to fourteen years. So if this were handled by other than a plea agreement, the law provides you could get anywhere from three to 14 years in prison, plus two years mandatory supervised release. Other possibilities include probation or conditional discharge not to exceed four years, periodic imprisonment of 18 to 30 months. And you could be fined up to $25,000. So those are the possibilities there. Do you have any question about that, Mr. Holborow?"

Defendant had no questions. The court then stated:

"Now, *** Count 3, 4, Count 5, are aggravated battery counts. Those are Class 3 felonies. You are eligible for an extended prison term of up to ten years there. So if this were handled by other than a plea agreement as to those three counts, you could get anywhere from two to ten years in prison, plus two years mandatory supervised release."

Addressing the next count, the court stated,

"Count 6 is a theft count as a subsequent offense. That is a Class 4 felony. And there, you could get prison of anywhere from one to three years, plus one year mandatory supervised release."

The court then described the potential penalties attached to the remaining misdemeanor count.

Before accepting Holborow's plea, the trial court reiterated the plea agreement, but made no mention of MSR. The trial court also failed to mention MSR in sentencing Holborow, and the MSR term was not included in the written sentencing order. Holborow did not seek to withdraw his plea and did not file a direct appeal.

Holborow did file a postconviction petition alleging that his constitutional rights were substantially violated when he received a more onerous sentence than he bargained for in accepting the plea agreement. Holborow contended that he was never advised that he would be required to serve a 3-year term of MSR in addition to the 16-year sentence he agreed to as part of his plea bargain. The trial

-5-

court summarily dismissed Holborow's petition, finding that his claim was refuted by the record. The appellate court affirmed, finding that the trial court mentioned MSR to Holborow four different times during the plea hearing. *Holborow*, 382 Ill. App. 3d at 861. The appellate court acknowledged that the admonishments could have been clearer, but nevertheless concluded that the admonishments were sufficient to make Holborow aware of the MSR requirement. *Holborow*, 382 Ill. App. 3d at 865. Holborow now appeals.

ANALYSIS

The defendants collectively assert that the trial courts erred in summarily dismissing their postconviction petitions as frivolous or patently without merit at the first stage of postconviction review because the petitions demonstrated that their constitutional rights were substantially violated. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122–1 *et seq.* (West 2006)) provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions. *People v. Beaman*, 229 Ill. 2d 56, 71 (2008). A postconviction proceeding is a collateral attack on a prior conviction that is limited to constitutional matters that were not and could not have been previously adjudicated. *People v. Johnson*, 206 Ill 2d 348, 356 (2002).

The Act provides for a three-stage proceeding in all cases that do not involve the death penalty. *People v. Harris*, 224 Ill. 2d 115, 125 (2007). At the first stage, the trial court must independently determine, within 90 days of its filing, whether the petition is frivolous or patently without merit. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996); 725 ILCS 5/122–2.1(a)(2) (West 2006). A petition can be dismissed at the first stage as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis in law when it is grounded in "an indisputably meritless legal theory," for example, a legal theory which is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16. A petition lacks an arguable basis in fact when it is based on a "fanciful factual allegation," which includes allegations that are "fantastic or delusional" or belied by the record. *Hodges*, 234 Ill. 2d at 16-17. Further, a petition alleging

-6-

nonfactual and nonspecific assertions that merely amount to conclusions will not survive summary dismissal under the Act. *People v. Burt*, 205 Ill. 2d 28, 35-36 (2001). We review the first-stage dismissal of a postconviction petition *de novo*. *People v. Williams*, 209 Ill. 2d 227, 234 (2004).

Defendants contend that a substantial violation of their rights occurred because the trial courts failed to admonish them, prior to accepting their negotiated guilty pleas, that terms of MSR would be added to their sentences. Defendants maintain that the addition of MSRs to their bargained-for sentences deprives them of the benefit of their bargain and violates their right to due process. Defendants assert that they are entitled to postconviction relief and rely on this court's decision in *People v. Whitfield*, 217 Ill. 2d 177 (2005), to support their argument. The State first argues that both defendants were adequately advised of the MSR requirement before pleading guilty, and that the trial courts' admonishments substantially complied with Rule 402 and the requirements of due process. Alternatively, the State argues that this court announced a new rule of criminal procedure in *Whitfield*, and the new rule should not be applied retroactively to cases that were final before the pronouncement of the rule. Notably, there is no dispute that the convictions before us were final prior to this court's decision in *Whitfield*. As a second alternative, the State contends that defendants' petitions are untimely filed, and that defendants are unable to show that the delay in filing was not due to their culpable negligence.[1]

The issue of whether the admonishments given to the defendants in this case were sufficient to comply with *Whitfield* would not require resolution if we were to conclude that *Whitfield* created a new rule that does not warrant retroactive application on collateral review. Accordingly, we consider the State's retroactivity argument first, and determine whether *Whitfield* created a new rule of criminal procedure warranting retroactive application.

---

[1]The appeal in defendant Morris' case was brought by the Cook County State's Attorney's office and the appeal in defendant Holborow's case was brought by the Illinois Attorney General. We refer to these parties as "the State," but note that the State raised different arguments on appeal.

In *Whitfield*, the defendant pleaded guilty to charges of first degree murder and armed robbery pursuant to a negotiated plea agreement which provided that the defendant would receive concurrent sentences totaling 25 years in exchange for his guilty plea. *Whitfield*, 217 Ill. 2d at 179. Although a three-year term of MSR was statutorily required to be served in addition to this sentence, MSR was never discussed by the State during plea negotiations and the defendant was never admonished of his MSR obligation by the trial court during the plea hearing. *Whitfield*, 217 Ill. 2d at 180. The defendant sought postconviction relief, asserting that his due process rights were violated because the MSR term added to his negotiated sentence resulted in a more onerous sentence than the one for which he had bargained before pleading guilty. The defendant's petition was dismissed at the second stage of postconviction review, and the appellate court affirmed the dismissal order. *Whitfield*, 217 Ill. 2d at 181-82.

In raising his claim before this court, the defendant made clear that he was not contesting the validity of his plea on the grounds that it was not knowingly and voluntarily made. Instead, the defendant asserted a "benefit of the bargain" claim and argued that his constitutional right to due process and fundamental fairness was violated because the sentence he received was different, and more onerous, than the sentence he bargained for with the State. We explained that the defendant's argument was rooted in the United States Supreme Court's decision in *Santobello v. New York*, 404 U.S. 257, 262, 30 L. Ed. 2d 427, 433, 92 S. Ct. 495, 499 (1971), where the Supreme Court held that the defendant's due process right was violated when the State promised to refrain from making a sentencing recommendation at the defendant's trial as part of the plea agreement and then failed to honor that promise. *Whitfield*, 217 Ill. 2d at 185. Citing approvingly to *Santobello*, and our decision in *People v. Evans*, 174 Ill. 2d 320, 326-27 (1996) (holding that both the State and the defendant are bound to the terms of a plea agreement under *Santobello*), we declared that a defendant has a due process "contract" right to enforce the terms of a plea agreement, and the unilateral modification of the agreement to include a term of MSR not previously bargained for amounted to a breach of the plea agreement

-8-

and violated principles of fundamental fairness. *Whitfield*, 217 Ill. 2d at 189-91.

We stated that our opinion in *Whitfield* was "in conformity with earlier decisions of this court." *Whitfield*, 217 Ill. 2d at 191. We pointed to Rule 402(a)(2), which safeguards defendants' due process right to be properly and fully admonished, and this court's holding in *People v. Wills*, 61 Ill. 2d 105, 109 (1975), that a defendant must be admonished that a period of parole (now called MSR) is part of the sentence imposed to ensure that the plea is knowing and voluntary. We also pointed to *People v. McCoy*, 74 Ill. 2d 398, 402 (1979), where this court held that the failure to admonish a defendant of parole did not amount to a due process violation, as the defendant was still sentenced to a term significantly lower than that which could have been imposed had he not entered a guilty plea and negotiated for a sentence recommendation. Additionally, we discussed appellate court cases that distinguished *McCoy* and found that the failure to admonish a defendant of MSR amounted to a due process violation where the defendant entered an open guilty plea, but where the term imposed, plus MSR, exceeded the maximum sentence the defendant was told he could receive. *People v. Fish*, 316 Ill. App. 3d 795 (2000); *People v. Brown*, 296 Ill. App. 3d 1041 (1998); *People v. Coultas*, 75 Ill. App. 3d 137 (1979). We also noted appellate court cases that held that a due process violation occurred where the defendant was not advised of MSR after entering a negotiated guilty plea for a specific sentence. *People v. Smith*, 285 Ill. App. 3d 666 (1996); *People v. Moore*, 214 Ill. App. 3d 938 (1991); *People v. Didley*, 213 Ill. App. 3d 910 (1991); *People v. O'Toole*, 174 Ill. App. 3d 800 (1988); *People v. Kull*, 171 Ill. App. 3d 496 (1988). In reliance on these cases, and the principles of Rule 402, we held:

> "[A]lthough substantial compliance with Rule 402 is sufficient to establish due process [citations], and an imperfect admonishment is not reversible error unless real justice has been denied or the defendant has been prejudiced by the inadequate admonishment [citation], there is no substantial compliance with Rule 402 and due process is violated when a defendant pleads guilty in exchange for a specific sentence and the trial court fails to advise the defendant, prior to accepting his plea, that a mandatory supervised release term will be

added to that sentence. In these circumstances, addition of the MSR term to the agreed-upon sentence violates due process because the sentence imposed is more onerous than the one defendant agreed to at the time of the plea hearing." *Whitfield*, 217 Ill. 2d at 195.

Having determined that the defendant's constitutional rights were violated, we fashioned an appropriate remedy. *Whitfield*, 217 Ill. 2d at 202. We noted that in *Santobello*, the Supreme Court instructed that, where a defendant does not receive the benefit of his bargain, the remedy is to ensure that the promise be fulfilled or that defendant is given the opportunity to withdraw his plea. *Whitfield*, 217 Ill. 2d at 202, citing *Santobello*, 404 U.S. at 262-63, 30 L. Ed. 2d at 433, 92 S. Ct. at 499. We determined that the remedy requested by the defendant–fulfillment of the promise through modification of his sentence–was appropriate, and after considering cases from other jurisdictions affording this type of relief, we determined that the defendant's sentence should be modified from a term of 25 years plus 3 years MSR to a term of 22 years plus 3 years MSR. The matter was remanded to the trial court for modification of the sentence. *Whitfield*, 217 Ill. 2d at 205.

The State now asks us to consider whether our decision in *Whitfield* constituted a new rule and, if so, whether the rule should be applied retroactively to cases on collateral review. To make this determination, we apply the analysis set forth by the Supreme Court in *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989), and adopted by this court in *People v. Flowers*, 138 Ill. 2d 218, 237 (1990). In *Teague*, the Supreme Court held that new constitutional rules of criminal procedure are not applicable to cases on collateral review unless the rule falls within one of two exceptions: (1) the new rule places certain kinds of primary, private individual conduct beyond the power of the criminal-law-making authority to proscribe; or (2) the new rule is a "watershed rule" of criminal procedure, *i.e.*, a rule that is " ' "implicit in the concept of ordered liberty" ' " and "without which the likelihood of an accurate conviction is seriously diminished." *Teague*, 489 U.S. at 311-13, 103 L. Ed. 2d at 356-58, 109 S. Ct. at 1076-77, quoting *Mackey v. United States*, 401 U.S. 667, 693, 28 L. Ed. 2d 404, 421, 91 S. Ct. 1160,

1180 (1971), quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 82 L. Ed. 288, 292, 58 S. Ct. 149, 152 (1937).

The *Teague* Court acknowledged that it is often difficult to determine when a new rule is announced, but instructed that, in general, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. [Citations.] To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." (Emphasis in original.) *Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070; *Flowers*, 138 Ill. 2d at 239-40. Since *Teague*, the Supreme Court has further explained the "new rule" concept. In *Butler v. McKellar*, 494 U.S. 407, 415, 108 L. Ed. 2d 347, 356, 110 S. Ct. 1212, 1217 (1990), the Court instructed that "the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague*." Further, in *Saffle v. Parks*, 494 U.S. 484, 488, 108 L. Ed. 2d 415, 424, 110 S. Ct. 1257, 1260 (1990), the Supreme Court stated that a decision constitutes a new rule unless "a state court considering *** [the] claim at the time *** [the] conviction became final would have felt compelled by existing precedent to conclude that the rule *** was required by the Constitution."

Applying these principles to *Whitfield*, we conclude that a new rule was created in that case. Prior to *Whitfield*, Illinois courts routinely held that a defendant's right to due process was protected even in the face of a faulty MSR admonishment, as long as the defendant's plea was entered knowingly and voluntarily. As this court explained in *Wills*, "[t]he constitutional requirement for a valid plea of guilty is that it be intelligent and voluntary." *Wills*, 61 Ill. 2d at 110. The *Wills* court went on to explain that this requirement stemmed from the United States Supreme Court's decision in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), and added that one of the objectives of the newly amended version of Rule 402 was to comply with *Boykin*'s requirement. Although courts considered the defendant's bargain with the State in determining the propriety of certain MSR admonishments, particularly in cases where there was a fully negotiated plea (*Smith*, 285 Ill. App. 3d 666; *Moore*,

214 Ill. App. 3d 938; *Didley*, 213 Ill. App. 3d 910; *O'Toole*, 174 Ill. App. 3d 800 (1988); *Kull*, 171 Ill. App. 3d 496), the focus of reviewing courts' analysis remained on the requirements of Rule 402 and the voluntary and knowing nature of the plea.

*Whitfield* distinguished its rationale from *Boykin* and its progeny by relying squarely on the Supreme Court's decision in *Santobello*, and thus marked the first time this court held that a faulty MSR admonishment deprived a defendant of his right to due process by denying him the benefit of his bargain with the State. The fact that our opinion in *Whitfield* was "in conformity" with other opinions of the court (*Whitfield*, 217 Ill. 2d at 191) does not mean that our decision was "dictated" (*Teague*, 489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070) or "compelled" by this court's precedent (*Saffle*, 494 U.S. at 488, 108 L. Ed. 2d at 424, 110 S. Ct. at 1260; see also *Flowers*, 138 Ill. 2d at 240). Additionally, there can be no dispute that the remedy we fashioned in *Whitfield* was novel and not based on the precedent of this court. Accordingly, we hold that *Whitfield* announced a new rule.

Having reached this conclusion, we now determine whether the new rule should be applied retroactively to cases on collateral review. Retroactive application would only be appropriate if the new rule falls within one of the *Teague* exceptions. It is clear that the rule announced in *Whitfield* does not legalize primary, private individual conduct and does not reinterpret a statute. Therefore, we find that the first *Teague* exception is inapplicable. We also find that *Whitfield* did not present a "watershed rule" of criminal procedure implicit in the concept of ordered liberty and central to the accuracy of a conviction. *Teague*, 489 U.S. at 311-13, 103 L. Ed. 2d at 356-58, 109 S. Ct. at 1076-77; *Flowers*, 138 Ill. 2d at 241-42. We cautioned in *Flowers* that this exception must be "narrowly construed" (*Flowers*, 138 Ill. 2d at 242), and we now note that, since *Teague*, the United States Supreme Court has rejected every claim brought before it alleging that a new rule satisfies the requirements for watershed status (*Whorton v. Bockting*, 549 U.S. 406, 418, 167 L. Ed. 2d 1, 12, 127 S. Ct. 1173, 1181-82 (2007)). The only rule identified by the Supreme Court as an example of a wathershed rule was pronounced 16 years before *Teague* in *Gideon v. Wainwright*, 372 U.S. 335, 344-45, 9 L. Ed. 2d 799, 805, 83 S. Ct. 792, 796-97 (1963). There, the Court held that counsel

must be appointed for any indigent defendant charged with a felony because the denial of such representation presents an intolerably high risk of an unreliable verdict. The rule in *Gideon* has been described as a "profound and ' "sweeping" ' change" which altered our understanding of the "bedrock procedural elements" essential to the fairness of a criminal proceeding. *Whorton*, 549 U.S. at 420-21, 167 L. Ed. 2d at 14, 127 S. Ct. at 1183-84.

*Teague* explains that the scope of the second exception should be limited:

> "to those new procedures without which the likelihood of an accurate conviction is seriously diminished.
>
> Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge. We are also of the view that such rules are 'best illustrated by recalling the classic grounds for the issuance of a writ of habeas corpus–that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that the conviction was based on a confession extorted from the defendant by brutal methods.' [Citation.]" *Teague*, 489 U.S. at 313-14, 103 L. Ed. 2d at 358, 109 S. Ct. at 1077.

*Gideon* represented this type of rule. However, the rule announced in *Gideon*, unlike the rule before us, directly affected the integrity of a criminal conviction and altered the manner by which criminal trials are conducted. *Teague* makes clear that the focus of the inquiry when considering whether the second exception applies is the accuracy of the conviction and finding of guilt. The due process violation that occurs when a defendant does not agree to a term of MSR but then receives one has nothing to do with accuracy of the conviction, but involves a matter of sentencing. We emphasized this distinction in *People v. De La Paz*, 204 Ill. 2d 426, 438 (2003), when we considered whether the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), met the second exception of *Teague*. We concluded that a rule that only affects the enhancement of a defendant's sentence does not amount to an error which seriously affects the fairness, integrity or public

-13-

reputation of judicial proceedings so as to fall within the second *Teague* exception requiring retroactivity in all cases. We see no reason to deviate from this rationale here.

While the rule announced in *Whitfield* is based on the bedrock constitutional right to due process, the Supreme Court instructs that this is not enough to meet the second *Teague* exception. The *Teague* requirement:

> "cannot be met simply by showing that a new procedural rule is *based on* a 'bedrock' right. We have frequently held that the *Teague* bar to retroactivity applies to new rules that are based on 'bedrock' constitutional rights. [Citation.] Similarly, '[t]hat a new procedural rule is "fundamental" in some abstract sense is not enough.' [Citation.] Instead, in order to meet this requirement, a new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding. In applying this requirement, we again have looked to the example of *Gideon*, and 'we have not hesitated to hold that less sweeping and fundamental rules' do not qualify. [Citation.]" (Emphasis in original.) *Whorton*, 549 U.S. at 420-21, 167 L. Ed. 2d at 14, 127 S. Ct. at 1183.

The rule announced in *Whitfield* cannot be characterized as a profound and sweeping change to rules of criminal procedure which is essential to the fundamental fairness of criminal proceedings. Accordingly, we conclude that under *Teague* and its progeny, the rule announced in *Whitfield* does not represent a watershed rule of criminal procedure that requires retroactive application to cases on collateral review.

This conclusion does not end our analysis, however, because in addition to providing instruction on the application of new rules on collateral review, the *Teague* opinion also provides instruction on the announcement of new rules on collateral review. In *Teague*, the Supreme Court stated:

> "Were we to recognize the new rule urged by petitioner in this case, we would have to give petitioner the benefit of that new rule even though it would not be applied retroactively to others similarly situated. In the words of JUSTICE BRENNAN, such an inequitable result would be 'an

-14-

unavoidable consequence of the necessity that constitutional adjudications not stand as mere dictum." [Citation.] ***

　　If there were no other way to avoid rendering advisory opinions, we might well agree that the inequitable treatment described above is 'an insignificant cost for adherence to sound principles of decision-making.' [Citation.] But there is a more principled way of dealing with the problem. We can simply refuse to announce a new rule in a given case unless the rule would be applied retroactively to the defendant in the case and to all others similarly situated. *** We therefore hold that, implicit in the retroactivity approach we adopt today, is the principle that habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review through one of the two exceptions we have articulated." (Emphasis omitted.) *Teague*, 489 U.S. at 315-16, 103 L. Ed. 2d at 359-60, 109 S. Ct. at 1078.

In cases following *Teague*, the Court has stated that "[u]nder *Teague*, new rules will not be applied *or announced* in cases on collateral review unless they fall into one of two exceptions." (Emphasis added.) *Penry v. Lynaugh*, 492 U.S. 302, 313, 106 L. Ed. 2d 256, 274, 109 S. Ct. 2934, 2944 (1989); *Butler*, 494 U.S. at 412, 108 L. Ed. 2d at 355, 110 S. Ct. at 1216.

　　The portion of the *Teague* opinion discussing the announcement of new rules on collateral review has not been applied or discussed in the case law of this state. Our courts have not had the opportunity to address this portion of the *Teague* opinion, as other than *Whitfield* our research has revealed no other case that set forth a new rule of criminal procedure in a collateral proceeding. A review of the *Whitfield* opinion and the briefs filed in that case demonstrates that the new rule announced was announced without the benefit of briefing or argument on the issue of retroactive versus prospective application. This court was not asked to consider the issue of retroactive versus prospective application and did not contemplate it.

　　We acknowledge that, where a case is "before us on collateral review, we must determine, as a threshold matter," whether granting the relief sought will create a new rule. *Penry*, 492 U.S. at 313, 106 L. Ed. 2d at 274, 109 S. Ct. at 2944; *Wills*, 61 Ill. 2d at 111 (noting

-15-

that the court must consider whether a new rule should apply retroactively or prospectively, and determining that the admonition requirement announced would apply prospectively to guilty pleas taken subsequent to the date the opinion was filed).[2] However, now that the issue of retroactivity is squarely before us, we recognize that a better course in *Whitfield* would have been to forgo the announcement of a new rule, as the rule announced cannot be evenhandedly applied to defendant Whitfield and to all others similarly situated. *Teague*, 489 U.S. at 316, 103 L. Ed. 2d at 359, 109 S. Ct. at 1078. However, the fact remains that a new rule was announced that should not be applied retroactively to cases on collateral review because it does not meet one of the two exceptions articulated in *Teague*. Accordingly, we hold that the new rule announced in *Whitfield* should only be applied prospectively to cases where the conviction was not finalized prior to December 20, 2005, the date *Whitfield* was announced. Defendants Morris and Holborow are therefore not entitled to prospective application of *Whitfield* because both of their convictions were final prior to the *Whitfield* decision.

We are aware that our decision in *Whitfield* has created some confusion in the lower courts and this confusion has not been limited to claims for postconviction relief. Indeed, questions remain in the minds of trial court judges as to what information must be conveyed to ensure that the admonishments given during a plea hearing comply with the requirements of Rule 402 and due process post-*Whitfield*. We take this opportunity to clarify.

Ultimately, admonishments are given to ensure that "the plea was entered intelligently and with full knowledge of its consequences" (*Whitfield*, 217 Ill. 2d at 184, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 23 L. Ed. 2d 274, 279-80, 89 S. Ct. 1709, 1712 (1969)), but they must also advise the defendant of the actual terms of the bargain he has made with the State. An admonition that uses the term "MSR" without putting it in some relevant context cannot serve to advise the defendant of the consequences of his guilty plea and cannot

---

[2]The question of whether *Whitfield* represented a new rule has been raised in the appellate court. See *People v. Molina*, 379 Ill. App. 3d 91 (2008); *People v. Muniz*, 386 Ill. App. 3d 890 (2008); *People v. Johnson*, 392 Ill. App. 3d 897 (2009).

aid the defendant in making an informed decision about his case. We recognize that there is no precise formula in admonishing a defendant of his MSR obligation, and we are mindful that "[a]n admonition of the court must be read in a practical and realistic sense. The admonition is sufficient if an ordinary person in the circumstances of the accused would understand it to convey the required warning." *People v. Williams*, 97 Ill. 2d 252, 269 (1983). The trial court's MSR admonishments need not be perfect, but they must substantially comply with the requirements of Rule 402 and the precedent of this court. *Whitfield*, 217 Ill. 2d at 195. *Whitfield* requires that defendants be advised that a term of MSR will be added to the actual sentence agreed upon in exchange for a guilty plea to the offense charged.

Ideally, a trial court's admonishment would explicitly link MSR to the sentence to which defendant agreed in exchange for his guilty plea, would be given at the time the trial court reviewed the provisions of the plea agreement, and would be reiterated both at sentencing and in the written judgment. See *People v. Daniels*, 388 Ill. App. 3d 952, 956 (2009) ("the trial court should specifically advise a defendant that a term of MSR is part of the sentence to which the defendant agreed"); *Berrios*, 387 Ill. App. 3d at 1064 ("[w]e recognize that trial courts should incorporate the mandatory supervised release admonitions into the pronouncement of the specific sentence and the written judgment"); *People v. Mendez*, 387 Ill. App. 3d 311, 321 (2008) ("[I]t would not place a significant burden on trial courts to comply with Rule 402 under *Whitfield* by explicitly admonishing defendants that the statutorily required terms of MSR will be added to their agreed-upon sentences. Neither is it a significant burden to include MSR on written judgments. These simple, basically clerical, procedures easily would avoid the problem of insufficient admonishments"); *People v. Marshall*, 381 Ill. App. 3d 724, 736 (2008) ("The better practice would incorporate the mandatory supervised release admonition when the specific sentencing is announced. The written sentencing judgment also should include the term of mandatory supervised release"); *People v. Jarrett*, 372 Ill. App. 3d 344, 352 (2007) ("the trial court's admonishment could have been improved by explicitly stating that MSR was in addition to any sentence he received"). We strongly encourage trial court judges to follow this practice, and to discuss MSR when reviewing the terms of

-17-

a defendant's plea agreement, to include the MSR term when imposing sentence, and to add the MSR term to the written order of conviction and sentence. This practice, which is not unduly burdensome, would ensure that defendants understand the consequences of their plea agreement and would avoid prolonged litigation on the issue.

## CONCLUSION

For the reasons stated herein, we affirm the judgments of the appellate court.

*Judgments affirmed.*