NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 190092-U

NO. 4-19-0092

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 13, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| NOLAN D. BOLDEN, | ) | No. 15CF778 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Holder White and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*    (1) Defendant forfeited his request for plain-error review of the trial court's alleged failure to properly admonish defendant with regard to mandatory supervised release.

(2) Defendant failed to establish the trial court's statement at defendant's sentencing hearing regarding defendant having three children by three different women can serve as a basis for withdrawing his guilty plea or was even improper.

¶ 2    On April 12, 2016, defendant Nolan D. Bolden pled guilty to the offense of armed robbery, a Class X felony. On May 13, 2016, the trial court sentenced defendant to 18 years in prison. The trial court's written order on defendant's guilty plea and its written sentencing order both indicated defendant's sentence included a three-year period of mandatory supervised release (MSR). On appeal, defendant argues the trial court violated his due process rights by failing to properly admonish him that a three-year period of MSR would be included in any prison sentence he would receive after pleading guilty. Defendant also argues the court denied him a

fair sentencing hearing by improperly considering his exercise of a constitutionally protected right (defendant's choice to have multiple children with multiple women) to cancel out a statutory mitigating factor (the undue hardship defendant's incarceration would have on his children). Defendant forfeited both of these issues and failed to establish this court should review these issues pursuant to the plain-error doctrine. We affirm the trial court's denial of defendant's motion to withdraw his guilty plea.

¶ 3                                     I. BACKGROUND

¶ 4        On May 29, 2015, the State charged defendant by information with armed robbery, a Class X felony (720 ILCS 5/18-2(a)(1) (West 2014)). According to the information, defendant was armed with a dangerous weapon, a hammer.

¶ 5        On April 12, 2016, defendant entered a negotiated guilty plea. Before entering his plea, the trial court told defendant:

> "THE COURT: Now this is a Class X felony. It calls for a mandatory minimum sentence fixed at six years. Your maximum would be out to 30 years, followed by a period of mandatory supervised release of three years, with a maximum fine of up to 25,000 dollars. So you understand, those would be your maximum penalties?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you're going to plead guilty; is that right?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Now did you understand the rights that I explained that you'll be giving up by pleading guilty?
>
> THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about those rights?

THE DEFENDANT: No, sir, but I do have one other question.

THE COURT: Go ahead.

THE DEFENDANT: You said a cap of 30. He told me it was a cap of 18.

THE COURT: Well, no. I'm telling you what the maximum is. I understand the plea agreement is your cap will be six to 18, but you have to understand the maximum could be out to 30.

THE DEFENDANT: Okay."

The court later asked defense counsel about the plea agreement. Defense counsel stated:

"Judge, this is by way of an open plea. The State has agreed that if the defendant does not violate any criminal statute between today's date and the sentencing date, if he cooperates with the presentence report, and if he appears at sentencing as ordered, the State will cap its recommendation at 18 years incarceration."

The State noted this was the agreement. The court then told defendant:

"So, [defendant], we're going to set this matter for a sentencing hearing. And at the sentencing hearing your penalty range will be somewhere between six with a maximum of 18, as opposed to six to 30. So your range is between six and 18. Is that your understanding of where we are right now?"

Defendant responded affirmatively.

¶ 6        According to the factual basis provided by the State, defendant entered a gas station around 10:30 p.m. carrying a hammer. He ordered the female worker to open the cash drawer. When the employee resisted, defendant threatened to hit her. When he lunged toward

the cash drawer, the employee attempted to defend herself with a baseball bat that was next to the cash drawer. Defendant and the female employee began to fight, and defendant struck her several times in the head with the hammer, causing a laceration to the back of her head. The employee eventually stopped fighting, and defendant took $650 from the cash drawer. Defendant then told the employee to open the safe or he would hit her again. He took more money from the safe and fled on foot. The Illinois State Police Crime Laboratory tested material collected from under the employee's fingernails where she scratched defendant. Defendant's deoxyribonucleic acid (DNA) matched the DNA recovered from under the employee's fingernails.

¶ 7　　　　The trial court accepted defendant's negotiated guilty plea. In a written order entered the same day, the court noted: "THE COURT FURTHER FINDS that the Defendant committed the offense of ARMED ROBBERY, a class X Felony as charged in count One of the information filed on May 29, 2015[,] with a Mandatory Supervised Release Term of 3 years[.]"

¶ 8　　　　A presentence report was filed with the trial court on May 10, 2016. According to the report, defendant's home was in Marion, Arkansas. He lived with his mother, stepfather, and sister. He had three minor children from three separate relationships. J.B., who was six years old, went back and forth living between his maternal and paternal grandparents. Defendant stated J.B. had lived with him prior to his most recent arrest. U.J., who was five years old, lived with her mother. J.S., who was four years old, lived with her mother. Defendant had been ordered to pay $54 in child support for U.J. and J.S. Defendant stated he traveled to visit his daughters every weekend prior to his incarceration. Defendant's education ended in the 11th grade. He did not graduate from high school.

¶ 9　　　　On May 13, 2016, the trial court held a sentencing hearing. The State

- 4 -

recommended a 15-year prison sentence. Defense counsel asked for a sentence near the statutory minimum. When the trial court asked defendant if he had anything to say, defendant responded:

"Yeah, like [my attorney] was saying, with regard to what led me to do it, I mean, I was in a little bind. I had lost my job. I had my children here with me. I had to find a way to get them back to Arkansas. I had been drinking. I hadn't been on my medication. And I mean, I, I went ahead and I messed up, really. But like I say, I was in a bind and I needed to get my kids back home. I didn't plan on hurting no one. I was struck in the back of the head with a baseball bat. I blacked out. I just remember waking up the next morning with the money."

¶ 10 The trial court noted it had considered the report prepared by Court Services, comments of counsel, and defendant's statement. Further, the court stated it had considered the documents defendant presented in mitigation, the circumstances surrounding the offense, and defendant's history, character, and condition. The court found no statutory mitigating factors applied. The court noted the record contained some non-statutory mitigation, noting defendant, who was 26, was still a relatively young man. With regard to statutory aggravating factors, the court noted defendant's criminal history, which had escalated from a misdemeanor assault to strangulation to using a hammer on a victim during an armed robbery. The court stated it needed to fashion a sentence to deter other similarly situated individuals from committing armed robberies. According to the court:

"Again, when I consider the circumstances surrounding the offense, he beat this woman with a hammer and ended up leaving with several hundreds of dollars from the establishment, and that's a particularly—the best way to say this, a particularly vicious crime to strike someone with hammer to commit an armed

robbery.

　　　　And then with the history, character and condition of the defendant, as I've indicated, he's 26 years of age. He hasn't got his education. He's brought three children into this world by three different mothers. He has no way to support them and/or raise them. He has no job. These are all factors that I'm sure contributed to his committing this offense, but nonetheless, this speaks volumes about his rehabilitative potential.

　　　　When I look to the agreement that was made, it's a cap of 18 years and his range was minimum six, maximum 30. That's a reasonable accommodation on the part of the State to cap the recommendation at 18 years. As Mr. Vargas has indicated and is set forth in the report, he apparently has a problem with alcohol and may or may not have been somewhat under the influence when he committed this offense. And the fact that he was hit with a baseball bat, that's of no concern to the Court. He had no right to go into this establishment armed with a hammer and steal money from this poor victim."

The court sentenced defendant to 18 years in prison with credit for 349 days served in the Champaign County Correctional Center. The Court entered a written judgment and sentencing order which specified a three-year term of MSR attached to defendant's sentence.

¶ 11　　　　On June 6, 2016, defendant wrote a letter to the circuit clerk stating he wanted to withdraw his guilty plea and appeal his sentence. He asked for counsel to be appointed because he was indigent.

¶ 12　　　　On August 8, 2016, counsel for defendant filed an Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016) certificate. The next day, the trial court held a hearing on defendant's

request to withdraw his guilty plea. When asked to describe the grounds upon which he believed he should be allowed to withdraw his plea, defendant stated he was not aware he was being charged with beating the victim with a hammer. Instead, he thought he was being charged with armed robbery. He also stated he believed his 18-year sentence was too long for a first offense on an armed robbery. Neither defendant nor his posttrial counsel took issue with the fact the written sentencing order included a three-year term of mandatory supervised release.

¶ 13 Before ruling on defendant's motion to withdraw his guilty plea, the trial court stated the 18-year sentence defendant received was a gift compared to the sentence defendant would have received had he gone to trial and been convicted. The court denied defendant's motion to withdraw his guilty plea.

¶ 14 Defendant appealed. On appeal, although defendant's appellate counsel raised several issues, counsel did not argue defendant was not properly admonished about MSR. However, the State conceded defendant's posttrial counsel did not comply with the requirements of Supreme Court Rule 604(d). *People v. Bolden*, 2018 IL App (4th) 160584-U, ¶ 12. This court accepted the State's concession and remanded the case for proper compliance with Rule 604(d). *Bolden*, 2018 IL App (4th) 160584-U, ¶ 13.

¶ 15 On remand, the trial court appointed the public defender to represent defendant and directed the filing of a new Motion to Withdraw defendant's guilty plea by January 25, 2019. On January 25, 2019, defendant's new attorney filed a Rule 604(d) certificate and a motion to withdraw defendant's guilty plea and vacate the judgment. Again, this motion to withdraw defendant's guilty plea did not argue the trial court failed to properly admonish defendant regarding MSR. Instead, it argued defendant did not understand the nature of the charge against him and believed the sentence he received was excessive because the trial court did not

adequately consider (1) the undue hardship defendant's incarceration would cause his children and (2) defendant's failure to take medication to treat his mental health problems.

¶ 16    On February 5, 2019, the trial court held a hearing on defendant's motion to withdraw his guilty plea and vacate the judgment. Defendant offered the following testimony. His attorney told him he was pleading guilty to simple robbery, not armed robbery. Further, his attorney never talked to him about armed robbery. Defendant stated he believed the sentence he received was excessive. According to defendant, the trial court did not consider the undue hardship defendant's incarceration would have on his children, who were living with him at the time of the offense in this case. Defendant stated he went back to Arkansas two or three times every month to see his children after the offense in this case. According to defendant, he had a close relationship with his children and was still in contact with them. Defendant also told the court he suffered from depression, schizophrenia, and bipolar disorder. He stopped taking medication for his mental illness at least two months before the crime in this case. Again, even though it was included in the trial court's written plea order and judgment and sentencing order, defendant did not complain he did not know he would have to serve a term of MSR after his release from prison when he entered his guilty plea.

¶ 17    The trial court noted defendant was read the charge to which he pled guilty and was sentenced within the plea agreement's sentencing cap. Pursuant to Supreme Court Rules, the court noted it was not sure defendant could argue the Court did not consider the right circumstances in determining what sentence to apply if the sentence was within the range set by the plea agreement. However, the court did not end its analysis there. According to the court:

> "This issue of supporting his dependents, well, we have a presentence report. He has three children, three different mothers. One lives with the

maternal grandparents. One lives with [A.J.], mother. One lives with [J.S.], mother.

Now, the Defendant is not paying—was ordered to pay $54 a month child support. Hasn't been paying anything.

So, when he has the audacity to come into this courtroom and tell me that his children need him, well, they needed him to support them. He needed them to help raise them. And while he was out and about, he did none of that.

The Court has to consider, quite frankly, consider that fact when looking at the history, character, and condition of the Defendant. Bringing children into this world that he's not prepared to support and/or raise, I think speaks volumes about his character.

He has the prior criminal history. And the fact that it's mentioned in the presentence report that he has some form of a mental history, the Court considered that.

I believe, given everything that's been presented, the motion is denied. He's remanded back to the custody of the Department of Corrections."

¶ 18    This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20    The ultimate issue in this case is whether the trial court erred by denying defendant's motion to withdraw his negotiated guilty plea. "[L]eave to withdraw a plea of guilty is not granted as a matter of right, but as required to correct a manifest injustice." *People v. Evans*, 174 Ill. 2d 320, 326, 673 N.E.2d 244, 247 (1996). "When a trial court reaches the merits of a motion to withdraw a guilty plea, the decision to grant or deny that motion 'rests in the

sound discretion of the circuit court and, as such, is reviewed for an abuse of discretion.' "
*People v. Glover*, 2017 IL App (4th) 160586, ¶ 29, 85 N.E.3d 815.

¶ 21    Defendant only made two arguments in his motion to withdraw.  First, he argued he did not understand the nature of the charges against him.  Second, he argued his sentence was excessive because the court did not consider the following:

> "a. the statutory factor that the defendant's imprisonment would result in an undue hardship to his dependents
>
> b. non-statutory factors of the Defendant's mental health problems, and the Defendant's statements he had not been taking his medications at the time of the offense."

On appeal, defendant argues his guilty plea should be vacated because (1) the trial court improperly admonished him regarding MSR and (2) the court improperly considered the manner in which defendant exercised a constitutional right—in this case, defendant's decision to have multiple children with multiple women.

¶ 22    Because defendant raised neither of these issues in his motion to withdraw his guilty plea, these arguments are forfeited. Ill. S. Ct. R. 604(d) (eff. July 1, 2017).  However, he asks us to review these issues pursuant to the plain-error doctrine.

¶ 23    "The plain-error doctrine allows a reviewing court to remedy a 'clear or obvious error' in two circumstances, regardless of the defendant's forfeiture: (1) where the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence; or (2) where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *People v. McLaurin*, 235 Ill. 2d 478, 489, 922 N.E.2d 344, 351 (2009).  It is important to remember "[t]he plain error rule is not a general savings clause for any

- 10 -

alleged error, but instead is designed to address serious injustices." *People v. Allen*, 323 Ill. App. 3d 312, 317, 752 N.E.2d 1200, 1205 (2001).

¶ 24        When a defendant seeks review pursuant to the plain-error rule, the defendant bears the burden of persuasion to show prejudice from the error. *McLaurin*, 235 Ill. 2d at 495-96, 922 N.E.2d at 355. A defendant can forfeit his argument the plain-error rule applies if he fails to make a sufficient argument on appeal. See *People v. Nieves*, 192 Ill. 2d 487, 503, 737 N.E.2d 150, 158 (2000) (The defendant's plain-error argument consisted of a single sentence asking the supreme court to employ the plain-error rule because the right to a fair death penalty sentencing hearing was a fundamental right. The balance of the argument consisted of explanations why the admission of the evidence was error, not plain error. The defendant did not argue the evidence was closely balanced or explain why the error was so severe that it required a remedy to preserve the integrity of the judicial process.); see also Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016).

¶ 25                         A. MSR Admonishments

¶ 26        Defendant first argues the trial court violated his due process rights when it failed to admonish him that a three-year term of MSR would be added onto any term of imprisonment he received pursuant to his negotiated guilty plea. We note the trial court did mention MSR before accepting defendant's guilty plea.

¶ 27        A trial court's MSR admonishment does not have to be perfect. *People v. Morris*, 236 Ill. 2d 345, 367, 925 N.E.2d 1069, 1082 (2010). Further, when the trial court is pronouncing the terms of the agreed-upon sentence, the court does not have to expressly link MSR to the agreed-upon sentence. *People v. Boykins*, 2017 IL 121365, ¶ 21, 93 N.E.3d 504. The real issue is whether the trial court's admonitions regarding MSR, when "read in a practical and realistic

sense" would inform "an ordinary person in the circumstances of the accused" a term of MSR would follow any prison sentence he received as a result of his guilty plea. *Morris*, 236 Ill. 2d at 366, 925 N.E.2d at 1082.

¶ 28 As previously noted, the record in this case shows the trial court discussed MSR before accepting defendant's guilty plea. In addition, the trial court noted in both the written guilty plea order and the sentencing order defendant's sentence would and did include a three-year period of MSR. Nonetheless, neither defendant's first posttrial attorney, nor his first appellate counsel, nor his second posttrial attorney argued the trial court did not properly admonish defendant about MSR.

¶ 29 As stated, this issue is forfeited because defendant did not raise it in his motion to withdraw his guilty plea, but he asks this court to review it pursuant to the plain-error doctrine. However, defendant's argument why the plain-error rule applies in this case is insufficient for the same reasons the defendant's argument failed in *Nieves*. Defendant spends his argument addressing whether the trial court erred in admonishing defendant but does not argue why the error—assuming we determined the court did err—rose to the level of a clear or obvious error. Further, even assuming, *arguendo*, we agree the court made a clear and obvious error, defendant does not make a substantive argument how either prong of the plain-error rule would apply to this situation.

¶ 30 Defendant's entire argument why the plain-error rule applies is as follows: "Whether the trial court's admonitions were insufficient pursuant to Rule 402 is reviewed as plain error because insufficient admonitions deny a defendant his constitutional right to due process and fundamental fairness. *People v. Company*, 376 Ill. App. 3d 846, 848[, 876 N.E.2d 1055, 1057] (5th Dist. 2007)."

¶ 31            Relying on *Company*, defendant seems to suggest a trial court's failure to properly give MSR admonitions must always be deemed plain error. We disagree. In *Company*, the Fifth District relied on our supreme court's opinion in *People v. Davis*, 145 Ill. 2d 240, 250, 582 N.E.2d 714, 719 (1991). However, in *Davis*, the supreme court merely stated:

> "Generally, under Illinois Supreme Court Rule 604(d), any issue not raised by the defendant in his motion to withdraw the plea of guilty shall be deemed waived upon appeal. [Citation.] However, if a lower court fails to give the defendant the admonishments required by Rule 402 *it is possible that this action can amount to plain error*, an exception to the waiver rule, as outlined under Illinois Supreme Court Rule 615 (134 Ill. 2d R. 615)." (Emphasis added.) *Davis*, 145 Ill. 2d at 250, 582 N.E.2d at 719.

Possible does not mean automatic, and we find *Davis* distinguishable.

¶ 32            In *Davis*, prior to the defendant pleading guilty to a burglary charge, the defendant believed he would be eligible for a program called Treatment Alternative to Street Crimes (TASC) because his attorney was told this by a TASC employee. *Davis*, 145 Ill. 2d at 243, 582 N.E.2d at 715-16. Further, before entering his plea, the trial court incorrectly admonished defendant he would be eligible for probation if he entered a guilty plea on the burglary charge. *Davis*, 145 Ill. 2d at 247-48, 582 N.E.2d at 717-18. Only after entering his plea did defendant learn he was not eligible for the TASC program because of his criminal history. *Davis*, 145 Ill. 2d at 243, 582 N.E.2d at 716. The defendant filed a motion to withdraw his guilty plea based on his misunderstanding he was eligible for the TASC program, and the trial court denied the motion. *Davis*, 145 Ill. 2d at 243-44, 582 N.E.2d at 716. The defendant did not make an argument addressing the trial court's incorrect admonition regarding probation. Even though

- 13 -

the appellate court pointed out the trial court's error in admonishing defendant, the defendant still failed to address the trial court's erroneous admonition in his brief to the supreme court. *Davis*, 145 Ill. 2d at 247, 582 N.E.2d at 717.

¶ 33 Our supreme court held the trial court erred in denying the defendant's motion to withdraw his guilty plea. *Davis*, 145 Ill. 2d at 247, 582 N.E.2d at 717. The court noted, "Instead of focusing solely on the understanding of the defendant at the time of his plea, although very important, this court's decision is substantially based upon the fact that the trial court incorrectly admonished the defendant." *Davis*, 145 Ill. 2d at 247, 582 N.E.2d at 717. Even though the defendant forfeited this issue by failing to raise it in his motion to withdraw his guilty plea, the supreme court stated, "Due to the gravity of the error, and in the interests of justice, we believe defendant's failure to raise the issue in his motion does not waive it on appeal." *Davis*, 145 Ill. 2d at 251, 582 N.E.2d at 719. The supreme court noted the record contained no evidence the defendant knew he was not eligible for TASC, probation, or conditional discharge when he entered his guilty plea. *Davis*, 145 Ill. 2d at 250, 582 N.E.2d at 719. The supreme court summarized its reasoning as follows:

> "We find that defendant's claimed misapprehension as to his eligibility for TASC, alone, may be insufficient to disturb the trial court's ruling, as the denial of the defendant's motion to withdraw his plea did not appear to amount to an abuse of the court's discretion. However, coupled with the fact that the trial court gave incorrect admonishments, which further led the defendant to believe that he would be eligible for a sentence other than incarceration, we find there to be plain error present on the part of the trial court." *Davis*, 145 Ill. 2d at 251, 582 N.E.2d at 719.

¶ 34     While the defendant in *Davis* did not argue in his motion to withdraw his guilty plea the trial court improperly admonished him he was eligible for probation, he did argue he entered his plea because he was told he would be eligible for the TASC program. In other words, the defendant had always contended he did not know his plea would require a period of incarceration. To the contrary, in the case *sub judice*, defendant never made any kind of argument he did not know he would be required to serve a period of MSR until this appeal—his second to this court. Moreover, we again emphasize the trial court did reference MSR during its admonitions before accepting defendant's guilty plea and did include the term of MSR in both the written guilty plea order and the written sentencing order. On this record, we do not know whether defendant—at the time he entered his plea—genuinely lacked knowledge he would have to serve a term of MSR upon his release from prison. However, we do know the written plea order and the written sentencing order should have placed defendant on notice he would have to serve a term of MSR following his incarceration. Thus, under the facts and circumstances of this case, we honor defendant's procedural default of the issue pertaining to MSR admonitions.

¶ 35                    B. Defendant's Sentencing Hearing

¶ 36     Defendant next argues the trial court denied him a fair sentencing hearing by improperly considering his exercise of a constitutionally protected right (having multiple children with multiple women) to cancel out a statutory mitigating factor (any hardship defendant's incarceration would have on his children). According to defendant, this court should vacate defendant's guilty plea and remand the case for further proceedings.

¶ 37     The State points out in its brief defendant entered a negotiated guilty plea and the trial court sentenced defendant within the terms of the negotiated plea. Defendant's recourse if he was not happy with the sentence was to file a motion to withdraw his guilty plea, returning the

parties to the status quo as it existed before the plea. *People v. Johnson*, 2019 IL 122956, ¶ 47, 129 N.E.3d 1239. Defendant filed a motion to withdraw his guilty plea but did not argue the trial court erred by punishing defendant for exercising his constitutional right to have multiple children with multiple women. Therefore, like the prior issue, defendant forfeited this argument but asks this court to review the issue pursuant to the plain-error rule.

¶ 38 However, on appeal, defendant cites no authority for the proposition a trial court's comments while sentencing a defendant within the limits of a negotiated plea agreement can be a basis for withdrawing his negotiated guilty plea. Because this court is not a repository in which an appellant can foist the burden of research, we find defendant forfeited his claim he should be allowed to withdraw his guilty plea based on the trial court's comments at sentencing. *People v. Jacobs*, 405 Ill. App. 3d 210, 218, 939 N.E.2d 64, 72 (2010). Regardless of forfeiture, defendant's complaints about the trial court's comments are meritless. We will address this issue no further.

¶ 39 III. CONCLUSION

¶ 40 For the reasons stated, we affirm the trial court's denial of defendant's motion to withdraw his guilty plea.

¶ 41 Affirmed.