NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180508-U

NO. 4-18-0508

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| KEITH M. McINTOSH, | ) | No. 12CF504 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mark S. Goodwin, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not err by dismissing defendant's *pro se* postconviction
petition at the first stage of the proceedings.

¶ 2   In March 2018, defendant, Keith M. McIntosh, filed *pro se* a postconviction

petition, arguing he received ineffective assistance of trial and appellate counsel for numerous

reasons.  In a June 2018 written order, the Vermilion County circuit court dismissed defendant's

postconviction petition, finding the petition was patently without merit and thus frivolous.

¶ 3   Defendant appeals, contending the circuit court erred by dismissing his

postconviction petition because two of his claims of ineffective assistance of trial counsel had an

arguable basis in law and fact.  We affirm.

¶ 4                    I. BACKGROUND

¶ 5   In October 2012, the State charged defendant with one count of home invasion

(720 ILCS 5/12-11(a)(2) (West 2010) (text of section effective July 1, 2011)), asserting defendant, who was not a peace officer acting in the line of duty, without authority, knowingly entered the dwelling place of another, and remained in such dwelling place until he knew or had reason to know that one or more persons was present and intentionally caused injury to Steven Ladd within such dwelling place on October 19, 2012.

¶ 6        Before the aforementioned charge, the circuit court had found defendant unfit to stand trial in another case (People v. McIntosh, No. 11-CF-699 (Cir. Ct. Vermilion Co.)).  The examining psychiatrist, Lawrence Jeckel recommended defendant receive medication and outpatient treatment and was unsure whether defendant could regain fitness within a year.  Defendant's arrest and incarceration in this case prevented him from undergoing the treatment.

¶ 7        On January 23, 2013, defense counsel requested a fitness examination in the other case and this case.  The circuit court appointed a psychologist, David Coleman, to evaluate defendant and opine whether he had regained fitness.  In his February 20, 2013, report, Coleman stated defendant functioned in the low-average range and had a verbal intelligence quotient of 86.  Coleman diagnosed defendant as having (1) post-traumatic stress disorder; (2) bipolar I disorder, most recent episode mixed with psychotic (paranoid) features; and (3) antisocial personality disorder.  Although he opined defendant was fit to stand trial, Coleman added defendant only "marginally" demonstrated an ability to choose among his legal options and to appreciate the implications of his decision.  Coleman further noted defendant would have difficulty confining his statements to concise and clearly relevant responses and might need reminders to consult his attorney before making legal choices.

¶ 8        In March 2013, the circuit court held a hearing on the question of whether defendant had regained his fitness to stand trial.  Defendant was present at the hearing, with

defense counsel. The court had reviewed Coleman's report, and the parties stipulated to Coleman's findings. The court accepted the stipulation and found defendant competent to stand trial.

¶ 9 On May 1, 2013, the circuit court held defendant's bench trial. The State presented the testimony of Gracie Pruitt, Officer Patrick Carley, Ladd, and Officer Brian Lange. In addition to the witnesses' testimony, the State presented two photographic lineups, five photographs of the victim, and recordings of both Pruitt's and Ladd's 911 calls on the night of the incident. The two recordings and five photographs were all on a compact disc labeled State's exhibit No. 1. Defendant testified on his own behalf.

¶ 10 Pruitt testified she was 30 years old and a friend of defendant. Pruitt admitted she had personal items at defendant's house because she often stayed there to use drugs. On October 19, 2012, Pruitt was at the home of Ladd, who was also her friend. Defendant came to Ladd's home 10 or 11 times, knocked loudly on the door, and screamed he was at the door. No one answered the door. Pruitt also testified defendant kept calling. She denied calling or texting defendant that day. Eventually that evening, Ladd answered the door when defendant knocked. Pruitt said she did not remember what happened, only that she was scared. She took her cellular telephone (cellphone) into the bedroom closet and called 911. Pruitt testified she did not talk to the 911 operator out of fear and instead stuck her cellphone out to record what was going on between defendant and Ladd. The recording of Pruitt's 911 call lasted a little under two minutes. The recording was admitted into evidence as State's exhibit No. 1 and played at trial. When the State moved for admission of its exhibit No. 1 during Pruitt's testimony, defense counsel did not object.

¶ 11 Pruitt also testified she could only hear, not see, what was happening in the house.

She said when Ladd opened the door, she "heard someone get hit." Pruitt also testified she heard Ladd state: "[Y]ou can't come in my house." Moreover, she heard defendant say: " '[I]s Gracie here[?] I'm gonna kill that bitch if I find her.' " Eventually, Pruitt heard the police arrive. She testified she waited approximately 10 minutes before she came out from the closet. When she did come out, Pruitt observed the police with Ladd, who had bruises on his face and leg. Pruitt admitted at the time of her testimony she was in prison on a drug charge.

¶ 12    Officer Patrick Carley testified he was dispatched to Ladd's residence for a home invasion where the suspect fled on a bicycle. Officer Carley noticed Ladd was shaken up and had blood and red marks on the "whole left side of his face." Ladd declined medical treatment for his injuries. Officer Carley also observed items knocked around on the floor. He did not notice any damage to Ladd's front door. Ladd informed Officer Carley he had opened the door for defendant.

¶ 13    Ladd testified Pruitt had arrived at his residence in the afternoon or evening on the day of the incident. He stated he and Pruitt were friends, with no romantic involvement. In fact, Pruitt was telling Ladd about "her concerns about her boyfriend," who she identified as defendant. Late that evening, Ladd heard pounding on the door while he and Pruitt were in the bedroom talking. Based on the sounds of the knock, Ladd thought it was the police. Ladd opened the door and saw defendant. Defendant asked if Pruitt was there, and Ladd said she was. Defendant then demanded to speak with her. Ladd told defendant he would check with Pruitt to see if she wanted to speak with him. When Ladd spoke with Pruitt, she did not want to talk with defendant. Ladd returned to the door, told defendant Pruitt did not want to speak with him, and began to close the door. Ladd then explained, "All of a sudden the door comes bursting in on me and it knocked me over[.]" Ladd testified defendant knocked him to the floor and "proceeded to

- 4 -

come in and start pummeling [him]." Defendant was sitting on Ladd punching him in the face with both fists. Ladd kicked defendant in the groin which caused defendant to stop. Defendant got up, went to the bedroom, opened the door, looked in, and then left.

¶ 14    After defendant left, Ladd closed and locked the door. Ladd then called 911. The police arrived and took pictures of Ladd's injuries to his knee, leg, and face. The following is the trial transcript related to the recording of Ladd's 911 call:

"MRS. LAWLYES [(ASSISTANT STATE'S ATTORNEY)]: Judge, I would ask to play the remainder of [State]'s Exhibit Number 1.

THE COURT: It's already been admitted.

(Whereupon, the remainder of the 911 tape, [State]'s Exhibit 1, was played for the Court.)

MR. MERLIE [(DEFENSE ATTORNEY)]: Object to that last part.

THE COURT: You can't object to a tape that's already admitted."

¶ 15    Officer Lange testified he prepared a photographic lineup for Pruitt and Ladd. Both Pruitt and Ladd identified defendant in the photographic lineup as the perpetrator.

¶ 16    During his testimony, defendant said he was unemployed and received disability due to injuries he received in a car accident. On the day of the incident, defendant went to look for Pruitt and ended up at the home of Ladd, whom defendant had known for a couple of months. Defendant testified he knocked on the door and announced himself. Ladd opened the door, and defendant stepped inside, which defendant described as the immediate area of the front door. Defendant admitted Ladd did not ask him to come in. Defendant asked Ladd if Pruitt was there, and Ladd said she was. Defendant then asked to speak with Pruitt, but Ladd said no. Defendant testified he tried to walk around Ladd, but Ladd grabbed him. They "got to tussling" and fell to

the floor. Defendant testified Ladd hollered to get out of his house. Defendant further testified he "held [Ladd] with one hand and [he] was hitting [Ladd] a couple of times with one hand[.]" Defendant said he told Ladd not to "have [his] girl over here." They exchanged words, and Ladd told defendant to leave, so he did.

¶ 17　　　　On direct examination, defendant acknowledged he had convictions beginning in 1975. He noted his most recent one was for possession in McLean County because a friend's son dropped something in defendant's car. On cross-examination, defendant testified he had the following prior convictions: (1) possession of a controlled substance in 2010, which was the McLean County case; and (2) possession of cannabis with the intent to deliver in 2004.

¶ 18　　　　At the conclusion of the trial, the circuit court found defendant guilty of home invasion noting both Ladd's and defendant's version of the incident supported defendant's conviction for home invasion. After being granted several extensions of the deadline for filing a posttrial motion, in November 2013, defendant filed a motion for judgment notwithstanding the finding of guilt or in the alternative a new trial. At a joint hearing in March 2014, the court denied defendant's posttrial motion and sentenced defendant to 30 years in prison. Defendant was not present in the courtroom for his sentence because the judge ordered defendant removed from the courtroom "[d]ue to the Defendant's unwillingness to allow the Court to complete it's [*sic*] explanation of sentence[.]"

¶ 19　　　　Defendant filed a motion to reconsider his sentence, challenging the circuit court's finding defendant caused great bodily harm. At the May 2014 hearing on defendant's motion to reconsider his sentence, the circuit court vacated its previous finding of great bodily harm, which effectively removed the requirement of defendant serving 85 percent of his sentence. Defendant was then entitled to day-for-day good-conduct credit. The court otherwise

affirmed defendant's sentence.

¶ 20        Defendant appealed, and this court reversed the circuit court's judgment and remanded the case for a retrospective fitness hearing without addressing any of defendant's other arguments. *People v. McIntosh*, 2016 IL App (4th) 140438-U, ¶ 36 (stating after the retrospective fitness hearing, if defendant was unfit, the circuit court should order a new trial; if defendant was fit, defendant's conviction may stand). On remand, the circuit court conducted a retrospective fitness hearing in December 2016. The circuit court concluded defendant was fit at the time based on the entirety of Coleman's psychological evaluation.

¶ 21        Defendant again appealed and argued the following: (1) he should have been granted a new trial because the evidence at the retrospective fitness hearing suggested he was unfit to stand trial, (2) he should have been granted a new trial because the circuit court failed to hold the State to the requisite burden of proof, (3) his due-process rights were violated when the court ordered him removed from the sentencing hearing, and (4) his sentence was excessive because the court considered an element inherent in the offense as a factor in aggravation. *People v. McIntosh*, 2017 IL App (4th) 170012-U, ¶ 19. This court affirmed the circuit court's judgment. *McIntosh*, 2017 IL App (4th) 170012-U, ¶ 52.

¶ 22        In March 2018, defendant filed *pro se* a petition for relief under the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), raising numerous claims of ineffective assistance of trial and appellate counsel. On June 6, 2018, the circuit court filed a written order, dismissing defendant's petition at the first stage of the postconviction proceedings.

¶ 23        On July 23, 2019, defendant filed a timely motion for leave to file a late notice of appeal under Illinois Supreme Court Rule 606(c) (eff. July 1, 2017). See Ill. S. Ct. R. 651(d)

(eff. July 1, 2017) (providing the supreme court rules governing criminal appeals apply to appeals in postconviction proceedings). This court granted defendant's motion, and defendant filed his late notice of appeal, which sufficiently complied with Rule 606(d). Accordingly, this court has jurisdiction under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 24                                    II. ANALYSIS

¶ 25        The Postconviction Act "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354, 925 N.E.2d 1069, 1074-75 (2010). A proceeding under the Postconviction Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. English*, 2013 IL 112890, ¶ 21, 987 N.E.2d 371. The defendant must show he suffered a substantial deprivation of his federal or state constitutional rights. *People v. Caballero*, 228 Ill. 2d 79, 83, 885 N.E.2d 1044, 1046 (2008).

¶ 26        The Postconviction Act establishes a three-stage process for adjudicating a postconviction petition. *English*, 2013 IL 112890, ¶ 23. Here, defendant's petition was dismissed at the first stage. At the first stage, the circuit court must review the postconviction petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). To survive dismissal at this initial stage, the postconviction petition "need only present the gist of a constitutional claim," which is "a low threshold" that requires the petition to contain only "a limited amount of detail." *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996). Our supreme court has held "a *pro se* petition seeking postconviction relief under the [Postconviction] Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable

basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12, 912 N.E.2d 1204, 1209 (2009). A petition lacks an arguable legal basis when it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16, 912 N.E.2d at 1212. A petition lacks an arguable factual basis when it is based on a fanciful factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Hodges*, 234 Ill. 2d at 16-17, 912 N.E.2d at 1212. "In considering a petition pursuant to [section 122-2.1 of the Postconviction Act], the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding." 725 ILCS 5/122-2.1(c) (West 2018); see also *People v. Brown*, 236 Ill. 2d 175, 184, 923 N.E.2d 748, 754 (2010).

¶ 27 Our review of the first-stage dismissal of a postconviction petition is *de novo*. *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 20, 963 N.E.2d 394. With the *de novo* standard, the reviewing court affords no deference to the circuit court's judgment or reasoning. *People v. Walker*, 2018 IL App (1st) 160509, ¶ 22, 128 N.E.3d 978. Essentially, the reviewing court performs the same analysis the circuit court would have performed. *Walker*, 2018 IL App (1st) 160509, ¶ 22. Additionally, the reviewing court may affirm the circuit court's judgment on any basis found in the record. *Walker*, 2018 IL App (1st) 160509, ¶ 23.

¶ 28 On appeal, defendant contends he received ineffective assistance of trial counsel because counsel failed to (1) seek to bar evidence of defendant's prior convictions and (2) object to the inadmissible portions of Ladd's 911 call. This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective

standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. The *Strickland* Court noted a case should be decided on the ground of lack of sufficient prejudice rather than counsel's constitutionally deficient representation if it is easier to do so. *Strickland*, 466 U.S. at 697.

¶ 29 Defendant contends he established an arguable basis he was prejudiced by counsel's two alleged failures because the case came down to whose version of events was more credible, Ladd's or defendant's, and counsel's errors hurt defendant's credibility. Specifically, defendant contends the limited-authority doctrine did not apply because defendant had no criminal intent when he entered Ladd's residence. However, as the State notes, defendant argued on direct appeal the circuit court erroneously shifted the burden of proof to defendant to show his entry to Ladd's residence was authorized. *McIntosh*, 2017 IL App (4th) 170012-U, ¶ 36.

¶ 30 As part of his burden of proof argument on direct appeal, defendant contended the circuit court did not correctly understand the limited-authority doctrine because the issue of which version of events was believed concerning his entry into Ladd's dwelling was determinative in his case. *McIntosh*, 2017 IL App (4th) 170012-U, ¶ 38. This court disagreed

with defendant and agreed with the circuit court either defendant's or Ladd's version of the events supported an unauthorized entry for purposes of home invasion. *McIntosh*, 2017 IL App (4th) 170012-U, ¶ 38. We found the circuit court's comments at the conclusion of the bench trial showed the court understood the law and specifically the application of the limited-authority doctrine. *McIntosh*, 2017 IL App (4th) 170012-U, ¶ 39. This court explained the circuit court did the following:

> "The court made it clear that regardless of whether defendant's entry into the residence was initially authorized or not, his entry was certainly unauthorized at least at the time defendant began beating Ladd, making him guilty of home invasion. See *People v. Donnelly*, 226 Ill. App. 3d 771, 775 (1992*), abrogated on other grounds by People v. Williams*, 239 Ill. 2d 503 (2011), ('Exceeding the scope of that authority by threatening or injuring an occupant may render the perpetrator guilty of home invasion.'). The court specifically held the State sufficiently proved 'unauthorized entry as it is defined in the home invasion statute.' " *McIntosh*, 2017 IL App (4th) 170012-U, ¶ 39.

We found the circuit court's conclusion was proper "regardless of the absence of a step by step analysis applying the doctrine or the elements of the statute." *McIntosh*, 2017 IL App (4th) 170012-U, ¶ 39.

¶ 31        Defendant claims he is not trying to relitigate the burden of proof issues on direct appeal. However, his prejudice argument seeks to do just that. This court has already held the circuit court properly applied the limited-authority doctrine and properly concluded defendant was guilty of home invasion under his version of the facts. Thus, we disagree with defendant it is reasonable he might not have been found guilty but for counsel's alleged errors because

defendant's credibility was not at issue. As such, defendant has not alleged an arguable basis in both law and fact he was prejudiced by counsel's two alleged errors. Accordingly, we find the circuit court did not err by dismissing defendant's postconviction petition at the first stage of the proceedings.

¶ 32                    III. CONCLUSION

¶ 33          For the reasons stated, we affirm the Vermilion County circuit court's judgment.

¶ 34          Affirmed.