NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190352-U

NO. 4-19-0352

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 30, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| STESON L. CRIDER, | ) | No. 15CF242 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert K. Adrian, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in dismissing defendant's postconviction petition at the first stage of postconviction proceedings as frivolous and patently without merit where defendant failed to present an arguably meritorious claim of ineffective assistance of counsel.

¶ 2    Defendant, Steson L. Crider, appeals the trial court's summary dismissal of his *pro se* postconviction petition filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018). He contends the court's dismissal was erroneous because the petition stated the gist of a constitutional claim for ineffective assistance of counsel. We affirm.

¶ 3                            I. BACKGROUND

¶ 4    In May 2015, the State charged defendant with first degree murder (720 ILCS 5/9-1(a)(1) (West 2014)) for the shooting death of Rayshone Humphrey Jr., a 12-year-old child.

At defendant's October 2015 jury trial, the State and the defense presented evidence from several witnesses. The evidence relevant to the issue on appeal follows.

¶ 5         Defendant lived in Arizona but, on March 27, 2015, he was in Quincy, Illinois, visiting family and friends. He was aware of a feud between two groups of men. His group included his brothers, Stefan Crider III and Justin Cartmill, and two friends, Ja'Chaun Parker and Anthony Runnels. Witnesses saw defendant with a gun on the day and night of the shooting. The other group of men often congregated near Barb Stemmons's house, where the victim was planning to stay overnight with his friend.

¶ 6         Around midnight, a confrontation between some members of each group occurred at a local tavern. Witnesses said defendant was angry, presumably about this confrontation. Stefan, defendant, Shaine Thomas, Parker, and Runnels left the tavern in a vehicle. They drove to the area near Stemmons's house to find the other group. Parker testified defendant exited the vehicle while stating he intended to "pop one of those niggas." Parker saw defendant tuck a gun into his belt and head down an alley toward Stemmons's house.

¶ 7         Meanwhile, Humphrey was waiting in front of Stemmons's house for his mother to pick him up. Parker testified he heard a gunshot and saw defendant run back to their car. When defendant got in, he said he had "just popped one of the niggas," shooting him in the face. According to Runnels, defendant thought he had shot one of the members of the other group who had been wearing a red "hoodie." As it turned out, Humphrey was wearing a red hoodie and had been fatally shot in the head.

¶ 8         One of the State's witnesses, Helen Horton, who was Runnels's sister, testified she was sitting on steps in the dark across the street from Stemmons's house watching for her boyfriend, Clarence Braxton. She saw a person appear from the alley and shoot Humphrey. She

said she did not see the shooter's face, but she saw that he was also wearing a red "hoodie" with chains around his neck and a blonde patch in his hair. Horton acknowledged she had been convicted of multiple felonies and was a longtime drug abuser, though she had been clean for six months at the time of trial.

¶ 9 After the eight-day trial, the jury found defendant guilty of first degree murder and the trial court sentenced him to 65 years in prison. Defendant filed a direct appeal and this court affirmed. See *People v. Crider*, 2018 IL App (4th) 151023-U.

¶ 10 In February 2019, defendant filed the *pro se* postconviction petition at issue in this appeal. In it, defendant asserted he was denied his right to effective assistance of trial counsel because counsel did not (1) secure an expert witness in eyewitness identifications to discredit Horton, (2) call Braxton, Horton's boyfriend, as a witness to impeach Horton, and (3) call Tony Mclellan as a witness, who had supposedly overheard Horton and Runnels talking about falsely implicating defendant as the shooter. The only supporting document attached to his petition was his own affidavit, in which defendant stated he gave his attorney Mclellan's name prior to the start of the trial.

¶ 11 On May 3, 2019, the trial court filed a written order, dismissing defendant's petition at the first stage of the postconviction proceedings. The court found defendant's claims had been forfeited for not being raised on direct appeal. As an alternative to and despite forfeiture, the court found defendant's petition frivolous and patently without merit where defendant did not demonstrate prejudice. The court found there existed ample evidence, even without Horton's testimony, to support the conviction.

¶ 12 This appeal followed.

¶ 13 II. ANALYSIS

¶ 14    The Act "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354 (2010). A proceeding under the Act is a collateral proceeding and not an appeal from the defendant's conviction and sentence. *People v. English*, 2013 IL 112890, ¶ 21. The defendant must show he or she suffered a substantial deprivation of his or her federal or state constitutional rights. *People v. Caballero*, 228 Ill. 2d 79, 83 (2008).

¶ 15    The Act establishes a three-stage process for adjudicating a postconviction petition. *English*, 2013 IL 112890, ¶ 23. Here, defendant's petition was dismissed at the first stage. At the first stage, the trial court must review the postconviction petition and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). To survive dismissal at this initial stage, the postconviction petition "need only present the gist of a constitutional claim," which is "a low threshold" that requires the petition to contain only "a limited amount of detail." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Our supreme court has held "a *pro se* petition seeking postconviction relief under the Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition lacks an arguable legal basis when it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16. A petition lacks an arguable factual basis when it is based on a fanciful factual allegation, such as one that is clearly baseless, fantastic, or delusional. *Hodges*, 234 Ill. 2d at 16-17. "In considering a petition pursuant to [section 122-2.1 of the Act], the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any

transcripts of such proceeding." 725 ILCS 5/122-2.1(c) (West 2018); see also *People v. Brown*, 236 Ill. 2d 175, 184 (2010). Our review of the first-stage dismissal of a postconviction petition is *de novo*. *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 20.

¶ 16            On appeal, defendant does not argue in support of his claims set forth in his postconviction petition related to counsel's failure to call as witnesses Mclellan or an expert in the field of eyewitness identification. Instead, he contends he stated the gist of a constitutional claim of ineffective assistance of trial counsel based on counsel's failure to call Braxton as a witness to impeach or undermine Horton's testimony. According to defendant, Braxton would have allegedly testified that Horton "fabricated a story" naming defendant as the shooter. Defendant claims counsel did not investigate this witness and therefore did not have all the facts necessary to make a reasonable strategic assessment on whether Braxton would have been useful as a defense witness for the purpose of undermining Horton's credibility. Defendant claims there is arguably a reasonable probability the jury may have found defendant not guilty if the State's witnesses were "thoroughly undermined" and had counsel not rendered ineffective assistance.

¶ 17            This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment. *Evans*, 186 Ill. 2d at 93. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93. To

satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93. The *Strickland* Court noted a case should be decided on the ground of lack of sufficient prejudice rather than counsel's constitutionally deficient representation if it is easier to do so. *Strickland*, 466 U.S. at 697.

¶ 18 First, the State contends defendant did not comply with section 122-2 of the Act's supporting-document requirement in his ineffective assistance of counsel claim. To sustain an ineffective-assistance-of-counsel claim for counsel's failure to investigate or present a witness, the defendant's allegation must be supported by an affidavit from that witness that contains the witness's proposed testimony. 725 ILCS 5/122-2 (West 2018); *People v. Enis*, 194 Ill. 2d 361, 380 (2000); see also *People v. Dean*, 226 Ill. App. 3d 465, 468 (1992) (when defendant attacks competency of trial counsel in postconviction petition for failure to call or contact certain witnesses, defendant must attach affidavits from those witnesses). "In the absence of such an affidavit, a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant, and further review of the claim is unnecessary." *Enis*, 194 Ill. 2d at 380. Thus, we agree with the State that generally, a reviewing court would be unable to evaluate the propriety of a defendant's claim of ineffective assistance of counsel without the aid of an affidavit from the potential witness that would set forth that person's anticipated testimony.

¶ 19 However, here, an affidavit from Braxton would be insignificant. Even if we were to accept defendant's claim that counsel erred by failing to investigate and call Braxton as a witness, defendant cannot demonstrate prejudice. For argument's sake, we will assume Braxton would have testified that Horton told him she intended to identify defendant as the shooter to direct

the attention away from her brother, Runnels, as the shooter. The problem with that claim, as the State points out, is that Horton did not identify defendant as the shooter during her testimony. In fact, she testified she did not see the shooter's face. She merely described what the shooter was wearing. That is, she testified she witnessed the shooting, but she did not identify defendant as the shooter.

¶ 20 The jury heard overwhelming evidence from numerous witnesses suggesting defendant was the shooter. That is, it is unreasonable to believe the verdict would have been any different had Horton's credibility been undermined by Braxton's potential testimony. Horton's testimony was already seriously undermined by evidence of her criminal history and regular drug use. Given the other evidence presented at trial, Horton provided nothing of value to the jury to identify defendant as the shooter. In fact, as Detective Adam Gibson testified, Horton's information was insufficient to even make an arrest. In other words, evidence of defendant's guilt was overwhelming and independent of Horton's testimony. As such, defendant cannot demonstrate prejudice by counsel's failure to investigate Braxton as a potential witness.

¶ 21 Accordingly, we find the trial court properly dismissed defendant's postconviction petition at the first stage of the proceedings.

¶ 22                                  III. CONCLUSION

¶ 23 For the reasons stated, we affirm the trial court's judgment.

¶ 24 Affirmed.