2022 IL App (1st) 200648-U

No. 1-20-0648

Order filed March 25, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 14590 |
| | ) | |
| ARAELL ROSS, | ) | Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court.
Justices Harris and Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*: Summary dismissal of defendant's *pro se* postconviction petition is affirmed over his contention that he presented an arguably meritorious claim of ineffective assistance of guilty plea counsel.

¶ 2    Defendant Araell Ross, who pled guilty to four counts of attempted first degree murder and was sentenced to four concurrent terms of 31 years' imprisonment, appeals from the summary dismissal of his *pro se* petition for relief filed pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, he contends that his petition should be advanced to

second-stage postconviction proceedings because it alleged the arguably meritorious claim that his plea counsel lied to him in order to induce a guilty plea. For the reasons that follow, we affirm.

¶ 3    Defendant's convictions arose from the August 14, 2015, drive-by shooting of Johnnie Wesley, Marlon English, Anthony Vivian, and Dontae Walker in Chicago. Following his arrest, defendant was charged with 11 counts of attempted first degree murder, 3 counts of aggravated battery, and 1 count of aggravated discharge of a firearm.

¶ 4    On July 5, 2016, defense counsel filed a motion *in limine* requesting, among other things, that at trial, the defense "be allowed to introduce the negative findings on photo array line-ups that included photos of the charged Defendant by (1) Anthony Vivian, (2) Marlon English, and (3) Chiquita Anderson." When the motion was heard on July 15, 2016, counsel explained the request as follows:

> "Your Honor, if I may, these are people who at least from the police reports say that they are present there at the scene of the shooting. They view a photo array that includes a photograph of [defendant], and I think it's relevant for them to say that they essentially saw the incident, could have seen the shooter, and with his photograph in there, they are essentially saying that's not him. They are saying that—the lack of identification goes to a relevant factor suggesting that [defendant] is not the shooter in this incident."

The trial court ruled that the defense could pursue this line of questioning if the individuals testified at trial.

¶ 5    The next time the case was called, on August 22, 2016, the State informed the trial court that the defense had requested that a gunshot residue (GSR) "kit" be analyzed of the driver of the

vehicle defendant was stopped in. The State indicated that the results of such analysis would be ready by September 19, 2016, the day the case was set for a jury trial.

¶ 6    On September 19, 2016, the State answered ready and defense counsel requested a plea conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). The court admonished defendant that during such a conference, the attorneys would inform the court about the facts and circumstances of the case and about defendant's criminal history; that the court would "come up with an offer" it considered fair under the circumstances, which defendant could accept or reject; and that if defendant were to reject the offer, the case would go to trial before that judge. Defendant indicated that he understood and had no questions about the process. A conference was then held off the record.

¶ 7    Following the conference, defendant stated that he wished to enter pleas of guilty to four counts of attempted first degree murder: count V, which charged that he personally discharged a firearm at Wesley; count VI, which charged that he personally discharged a firearm at English; count IX, which charged that he personally discharged a firearm at English and caused great bodily harm; and count X, which charged that he personally discharged a firearm at Vivian and caused great bodily harm.

¶ 8    The trial court replied that the "offer from the court" was 31 years in prison. The court then explained the nature of the charges and the potential sentences, the types of trials available to defendant, and the rights that he was giving up by entering guilty pleas. Defendant stated that he understood, denied that anyone promised him anything or threatened him in any way to induce him to plead guilty, and affirmed that he was pleading guilty of his own free will. The court next stated that, during the Rule 402 conference, the State asked for the statutory maximum sentence

of 55 years in prison whereas defense counsel asked for the minimum of 31 years. The court decided, based upon defendant's age and lack of criminal background, to offer him the statutory minimum of 31 years in prison.

¶ 9    The State then presented the factual bases for the pleas, as stipulated to by and between the parties. On August 14, 2015, just before 7:30 p.m., defendant was a passenger in a minivan driving south on the 6100 block of South Kimbark Avenue. Defendant fired on a group of people, striking English in the stomach and in the wrist, and striking Vivian in the wrist. Defendant then proceeded down the block, where Wesley confronted him about shooting near a playground. Defendant shot at Wesley, striking Walker, who was nearby, causing a graze wound. Responding officers stopped the minivan, which was being driven by Darius Herron. Defendant tested positive for GSR, and a firearms expert determined that all six recovered shell casings were fired from the same firearm. Wesley identified defendant on scene. Wesley's wife identified the minivan "as the one where she had seen a passenger shooting out of that vehicle without identifying the defendant by face."

¶ 10    The court found that the pleas had been given knowingly and voluntarily and that there were factual bases for the pleas. It accepted the pleas and found defendant guilty of four counts of attempted first degree murder. After defendant waived his right to a presentence investigation, the court imposed four concurrent terms of 31 years' imprisonment. The State nol-prossed the remaining counts.

¶ 11    The trial court then admonished defendant that, even though he entered guilty pleas, he still had the right to appeal. However, in order to appeal, he "would have to file with the clerk of the court within 30 days of today's date a written motion to withdraw" the pleas which stated "all the reasons why you would want to withdraw your plea[s]," and that any issue not raised in the motion

would be "waived for appeal purposes." The court further explained that if the motion was granted, the court would set aside the guilty pleas and sentences, the case would be set for trial, and all the charges that were "dismissed" would be reinstated and set for trial. The court finally stated that if defendant could not afford an attorney or a transcript of the plea hearing, they could be provided free of charge. The court asked defendant whether he understood and defendant answered yes.

¶ 12    About four months after sentencing, defendant filed a *pro se* motion to withdraw his guilty pleas and vacate the sentences. The trial court denied the motion, finding it lacked jurisdiction. This court granted defendant leave to file a late notice of appeal, but ultimately dismissed the appeal because we lacked jurisdiction and the "admonition exception" did not apply to save defendant's appeal. See *People v. Ross*, 2019 IL App (1st) 172211-U, ¶¶ 12-15.

¶ 13    On November 6, 2019, defendant filed the *pro se* postconviction petition at issue in this appeal, supported by his own attestation affidavit, raising three claims.

¶ 14    First, defendant claimed that his defense counsel was ineffective in that he "caused [defendant] to enter into a plea which was based upon incorrect information and advice from defense counsel." Defendant alleged that counsel "on numerous occasions repeatedly told [him] the person he was in the van with had made incriminating statements against defendant" and "defense counsel's statements turned out to be false." Defendant maintained that counsel's "false statements" made him believe that "incriminating statements were going to be presented during a trial and that a witness would provide testimony against [him]," which "played into [defendant's] decision to enter into a plea agreement." According to defendant, counsel presented "false information *** for the sole purpose to induce [defendant's] plea." Defendant asserted that had counsel provided truthful information, he "would have strongly considered not entering into a

plea." Defendant also alleged that defense counsel was ineffective for failing to inform him prior to the day of trial that he had tested positive for GSR.

¶ 15    Second, defendant alleged that he entered an open guilty plea, but the trial court erroneously admonished him as if he had entered a negotiated plea.

¶ 16    Third, defendant alleged that the trial court failed to admonish him pursuant to Illinois Supreme Court Rule 605(b) (eff. Oct. 1, 2001).

¶ 17    The circuit court summarily dismissed the petition as frivolous and patently without merit on January 31, 2020. Defendant's notice of appeal was timely mailed on February 26, 2020, and date-stamped as received and filed on March 5, 2020. See Ill. S. Ct. R. 373 (eff. July 1, 2017) ("If received after the due date, the time of mailing by an incarcerated, self-represented litigant shall be deemed the time of filing"); Ill. S. Ct. R. 612(b)(18) (eff. July 1, 2017) (Rule 373 applies in criminal proceedings).

¶ 18    On appeal, defendant contends that his petition should be advanced for second-stage proceedings because it contained the arguably meritorious claim that defense counsel was ineffective for inducing his guilty plea by falsely claiming that the driver of the minivan involved in the shooting had implicated him and would be called as a witness at trial.

¶ 19    In cases not involving the death penalty, the Act provides a three-stage process for adjudication. 725 ILCS 5/122-1 (West 2018); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The instant case involves the first stage of the process, during which the trial court independently assesses the petition, taking the allegations as true and giving the petition a liberal construction. *Hodges*, 234 Ill. 2d at 10, 21. Based on this review, the trial court must determine whether the petition "is

frivolous or is patently without merit," and, if it so finds, dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2018).

¶ 20    A petition may be dismissed as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16. A petition has no arguable basis in law when it is founded in "an indisputably meritless legal theory," for example, a legal theory that is completely belied by the record. *Id.* A petition has no arguable basis in fact when it is based on a "fanciful factual allegation," which includes allegations that are "fantastic or delusional" or contradicted by the record. *Id.* at 16-17; *People v. Morris*, 236 Ill. 2d 345, 354 (2010). Our review of a first-stage dismissal is *de novo*. *Hodges*, 234 Ill. 2d at 9. Pursuant to this standard, we review the trial court's judgment, not the reasons given for it. *People v. Jones*, 399 Ill. App. 3d 341, 359 (2010).

¶ 21    Traditionally, to establish ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). However, our supreme court has indicated that in the context of first-stage postconviction proceedings, a defendant need not conclusively establish these factors; in *Hodges*, our supreme court held that "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17.

¶ 22    In this court, defendant asserts that the legal theory of ineffective assistance of counsel set forth in his petition is not indisputably meritless. He argues that his petition, liberally construed,

alleged that defense counsel misrepresented the strength of the State's evidence in order to pressure him to plead guilty, and that he learned of the misrepresentations sometime thereafter. According to defendant, defense counsel lied to him by communicating that Herron would testify against him at a trial. He maintains that counsel's use of a falsehood to pressure him to plead guilty is conduct that falls far outside the range of competence demanded of attorneys in criminal cases. Defendant also asserts that his petition demonstrated he was prejudiced by counsel's representation, as he alleged in the petition that absent counsel's misrepresentation, he would have "strongly considered" going to trial. He maintains that, liberally construing this claim, "if defense counsel had not lied to [defendant] to induce a guilty plea, [defendant] would have pursued a trial defense that challenged the prosecution's witnesses, as shown by the defense's motion *in limine*, which alleged that several individuals who witnessed the shooting were unable to identify [him]."

¶ 23   In addition, defendant asserts that the defense could have theorized that defendant tested positive for GSR because Herron was the shooter and GSR saturated the minivan's interior and settled on him. Defendant further argues that the factual allegations supporting his claim, taken as true and liberally construed, are not fanciful. He asserts that his allegation that counsel lied to him about Herron's readiness to testify against him at a trial "is not rebutted by the record because Herron's name did not appear in the prosecution's answer to discovery." Finally, defendant acknowledges that he did not attach an affidavit from defense counsel or explain its absence, but maintains that his claim falls within an exception to the affidavit requirement because the difficulty or impossibility of obtaining such an affidavit from counsel is self-apparent.

¶ 24   Initially, we cannot ignore that defendant's postconviction petition includes no supporting evidence for his claim of ineffective assistance of counsel. Under section 122-2 of the Act,

postconviction petitions must be supported with "affidavits, records, or other evidence" or "state why the same are not attached." 725 ILCS 5/122-2 (West 2018); see also *People v. Collins*, 202 Ill. 2d 59, 66-67 (2002) (verification affidavit not "substitute" for evidentiary support). We are mindful that where a defendant alleges ineffective assistance of counsel, his noncompliance with this provision may be excused "where the petition contains facts sufficient to infer that the only affidavit the defendant could have furnished, other than his own sworn statement, was that of his attorney." *People v. Hall*, 217 Ill. 2d 324, 333 (2005). Nevertheless, a postconviction petition still "must supply sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.' " *People v. Allen*, 2015 IL 113135, ¶ 24 (quoting *Collins*, 202 Ill. 2d at 67).

¶ 25 Defendant asserted in his petition that counsel repeatedly told him Herron had made statements incriminating him and said Herron would testify against him at trial, and that counsel's statements "turned out to be false." However, defendant provided no insight as to how or when he came to know counsel's assertions were untrue. While a *pro se* petitioner is only required to include a limited amount of detail in a postconviction petition and need not present formal legal arguments at the first stage, he is not excused from providing any factual detail at all surrounding the alleged constitutional violation. *People v. Hatter*, 2021 IL 125981, ¶ 24. Also, although defendant cannot be expected to have procured an affidavit from his trial counsel to support his claim (see *Hall*, 217 Ill. 2d at 333), we agree with the State that he cannot be excused for failing to obtain an affidavit or sworn statement from Herron or to explain why he did not do so. Without such an affidavit or explanation, defendant's claim amounts to little more than speculation that counsel falsely told him Herron would "provide testimony against [him]" at trial. See *People v.*

*Bew*, 228 Ill. 2d 122, 135 (2008) (claims of ineffective assistance of counsel cannot be based on mere speculation). In light of the lack of supporting documentation and the failure to provide any justification for its absence, summary dismissal was justified. 725 ILCS 5/122-2 (West 2018); *People v. Delton*, 227 Ill. 2d 247, 254 (2008).

¶ 26    Moreover, summary dismissal was proper because defendant's claim of ineffective assistance of counsel has no arguable basis in law or fact. See *Hodges*, 234 Ill. 2d at 16. Where a defendant claims his trial counsel was ineffective during a guilty plea proceeding, he must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hatter*, 2021 IL 125981, ¶ 26. In order to meet *Strickland*'s prejudice prong, the defendant must claim that he would have been better off going to trial because he would have been acquitted or because he had a viable defense. *Id.*; *Hall*, 217 Ill. 2d at 335-36.

¶ 27    Here, defendant asserted in his petition that "had defense counsel provided truthful information, [he] would have strongly considered not entering into a plea." In his brief on appeal, defendant suggests that at trial, the defense "would have pursued a trial defense that challenged the prosecution's witnesses, as shown by the defense's motion *in limine*, which alleged that several individuals who witnessed the shooting were unable to identify [defendant]," and that defense counsel could have theorized at a trial that Herron was the shooter and GSR saturated the minivan's interior and settled on defendant. But nowhere *in the petition* did defendant assert he was innocent or explain what defense he may have utilized at a trial. Defendant's conclusory allegation in his petition that absent counsel's alleged lying, he would have "strongly considered" not pleading guilty is insufficient to establish prejudice. See *Hatter*, 2021 IL 125981, ¶ 26 (assertion that

defendant would not have pled guilty must be accompanied by claim of innocence or a plausible defense).

¶ 28     We agree with the State that we must ask whether defendant arguably would have been "better off" rejecting the plea offer and insisting on a trial. *Id.* ¶¶ 26, 30. Here, had defendant proceeded to a trial, he would have had to defend against all of the charges that had been nol-prossed in exchange for his guilty plea and would have faced a maximum sentence of 55 years in prison for attempted first degree murder during which he personally discharged a firearm and caused great bodily harm. 720 ILCS 5/8-4(c)(1)(D) (West 2014); 730 ILCS 5/5-4.5-25(a) (West 2014). In these circumstances, there was no arguable advantage to defendant in withdrawing his guilty plea. See *Hatter*, 2021 IL 125981, ¶¶ 38-40 (affirming summary dismissal where there was no arguable advantage in withdrawing guilty plea because the defendant would have had to defend against nol-prossed charges and faced harsher sentencing penalties had he insisted on a trial). Where defendant is unable to make an arguable showing of prejudice, his petition is founded on a meritless legal theory and, therefore, has no arguable basis in law. See *Hodges*, 234 Ill. 2d at 16.

¶ 29     We further note that the record rebuts a factual allegation upon which defendant's claim of ineffectiveness is based. Specifically, defendant alleged in his petition that counsel falsely told him Herron would "provide testimony against [him]" at trial. In his brief on appeal, defendant argues that this allegation is not rebutted by the record because Herron's name did not appear in the prosecution's answer to discovery. However, our review of the record has revealed that, contrary to defendant's assertion, Herron actually was identified as a potential witness by the State. In its answer to discovery, the State listed about 30 police personnel and civilians that it "may or may not call" as witnesses. "Darius Heron" [*sic*] is the twelfth civilian listed. As such, the record

contradicts defendant's allegation that defense counsel lied by telling him Herron would be testifying for the State at trial. Where defendant's petition relied on a factual allegation that is contradicted by the record, it has no arguable basis in fact. *Hodges*, 234 Ill. 2d at 16-17. Thus, summary dismissal was warranted. See *People v. Coleman*, 183 Ill. 2d 366, 381-82 (1998) (if the factual allegations upon which a claim is predicated are contradicted by the record, the claim is inherently frivolous and patently without merit and dismissal will be upheld).

¶ 30    In sum, defendant's petition claiming ineffective assistance of counsel contains no supporting evidence, does not explain its absence, and has no arguable basis either in law or in fact. In these circumstances, it was properly dismissed as frivolous and patently without merit.

¶ 31    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 32    Affirmed.