2023 IL App (1st) 171479-UB

No. 1-17-1479

Order filed November 27, 2023.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 8886 05 |
| | ) | |
| DEMONTA BOLDEN, | ) | The Honorable |
| | ) | Vincent M. Gaughan |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

ORDER

¶ 1     *Held*: Postconviction counsel reasonably omitted defendant's mandatory supervised release claim from his amended petition. Additionally, the trial court properly dismissed defendant's amended petition where he failed to show that trial counsel was ineffective for failing to investigate police misconduct and failed to show a lack of culpable negligence for the untimely filing of his claim that trial counsel did not investigate his alibi witness.

¶ 2     Defendant Demonta Bolden appeals from the trial court's order granting the State's

motion to dismiss his amended petition under the Post-Conviction Hearing Act (Act) (725 ILCS

5/122-1 *et seq.* (West 2010)). On appeal, defendant asserts that postconviction counsel was unreasonable for omitting a meritorious mandatory supervised release claim from his amended petition. Defendant also asserts that his amended petition made a substantial showing that trial counsel was ineffective for failing to investigate prior incidents of police misconduct and for failing to investigate an alibi witness.

¶ 3     We initially affirmed the trial court's judgment, rejecting all of defendant's contentions. On September 27, 2023, however, the Illinois Supreme Court entered a supervisory order in this case. That court denied defendant's petition for leave to appeal, but directed us to consider the effect of "*People v. Addison*, 2023 IL 127119, on the issue of whether defendant received reasonable assistance of post-conviction counsel and determine if a different result is warranted." *People v. Bolden*, No. 127324 (Ill. Sept. 27, 2023) (supervisory order).[1] For the following reasons, we affirm the trial court's judgment once more.

¶ 4                                             I. Background

¶ 5                                         A. Motion to suppress

¶ 6     Defendant and several codefendants were charged with the first-degree murder of Charles Hunt on December 20, 2004. Hunt was killed during the attempted armed robbery of a Family Dollar store (2660 E. 79th Street) on the same day. Defendant moved to suppress evidence of inculpatory statements that allegedly resulted from coercion.

¶ 7     Essentially, defendant alleged that after he surrendered himself at the police station, Detective Thomas Ayers was initially kind to him. Detective Ayers told defendant, "If you just make a statement, you'll be out of here by tonight." In contrast, Detective Lorenzo Sandoval was hostile and told defendant to admit his involvement in the crime because he had already been

---

[1]Pursuant to the supervisory order, we vacated our original decision in this matter, which was filed on April 27, 2021.

implicated. After about an hour, Detective Ayers began yelling at defendant. The detective walked toward defendant, who had been standing, and pushed him down on a bench. In the process, defendant hit his back on a handcuff ring. Defendant ultimately made involuntary, incriminating statements due to Detective Ayers' promise of release, coupled with his sudden outburst of violence.

¶ 8    At the hearing on defendant's motion to suppress, Detective Ayers testified that at about 5 p.m. on March 17, 2005, defendant came to the police station. Detective Ayers, in the presence of Detective Sandoval and Detective Otto, interviewed defendant from 5:30 p.m. to 6 p.m. Defendant was read his rights and then made an exculpatory statement. When the detectives told defendant they had videotapes of his codefendants' confessions, defendant asked to see them. He watched the videotapes from about 5:30 p.m. to 8 p.m. and then asked to speak to Detective Ayers alone.

¶ 9    After Detective Sandoval left the room and Detective Ayers advised defendant of his rights once more, defendant made a statement. Assistant States Attorney Victoria Kennedy arrived and interviewed defendant in Detective Ayers' presence. Defendant gave essentially the same statement but requested that he not memorialize his statement until the next morning, as he was tired. The following day, defendant's statement was videotaped in the presence of Detective Ayers and ASA John Heil, who read defendant his rights and asked how he had been treated. Defendant's videotaped statement, which is not included in our record on appeal, was then played for the court.

¶ 10   Detective Ayers testified that he did not change his attitude toward defendant, display hostility toward him or scream at him. The detective denied that he pushed defendant down on a

3

bench, causing him to hit his back on a handcuff ring. Additionally, Detective Ayers denied ever telling defendant he would "be out of here by tonight" if he made a statement.

¶ 11    Detective Sandoval then testified that he was never hostile toward defendant and never told defendant he had to admit his involvement because codefendants had implicated him. Additionally, Detective Sandoval denied observing Detective Ayers scream at defendant, push him down on a bench or tell him he would "be out of here by tonight" if he made a statement. Detective Sandoval was not present for all of the interviews, however.

¶ 12    ASA Kennedy testified that after defendant was *Mirandized*, she spoke with him for 30 to 45 minutes in the presence of Detective Ayers. After having the detective leave the room, she asked defendant how he had been treated. Defendant said he had been fed and permitted to use the restroom. He did not indicate that Detective Ayers had pushed him, leading him to hit his back on a handcuff ring. Defendant also denied that any promises had been made in exchange for his statement.

¶ 13    Defendant testified that when he was initially placed in an investigation room, Detective Ayers treated him kindly while Detective Sandoval raised his voice at him, telling him that he participated in the robbery and might as well talk about it. Defendant denied involvement, however. The detectives left and returned. Detective Ayers, in a pleasant manner, told defendant that he would go home that night if he told the detectives what happened. Defendant again denied involvement.

¶ 14    After watching the videotapes of his codefendants' statements, defendant continued to deny involvement. Detective Ayers then became angry and said he knew defendant had done something. The detective yelled at defendant. When defendant stood up to talk to Detective Ayers, the detective pushed him back down. Defendant was scared because he thought Detective

4

Ayers was going to "finish beating me up." While defendant and the detective were alone, defendant said he was involved in the robbery because of the promise that he would get to go home. Defendant also acknowledged, however, that it was upsetting to watch people falsely implicate him and he wanted to straighten things out.

¶ 15    Defendant testified that when he subsequently talked to ASA Kennedy, he did not tell her about the promise of release because he did not know if Detective Ayers wanted him to share that information. Specifically, the detective and defendant were alone when the detective had made that statement. Defendant did not tell ASA Heil about the promise because Detective Ayers was present: "I knew that if I told him, that I'd have to still be there with Ayers when John Heil left." Defendant told ASA Heil he was well treated "because I wanted to go home."

¶ 16    The trial court denied defendant's motion to suppress, essentially finding the State's witnesses to be more credible than defendant.

¶ 17                              B. Guilty Plea Proceedings

¶ 18    At a hearing on December 12, 2007, defendant requested a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997), which resulted in a plea agreement. Back in court, the following ensued:

> "THE COURT: In exchange for a plea of guilty you're going to -- on count three, which is first degree murder, under the felony murder statute -- let me have the statute -- I mean the indictment. You're going to be receiving 28 years in the Illinois Department of Corrections, is that your understanding also?
>
> DEFENDANT: Correct.
>
>                              ***

THE COURT: All right. On a first degree murder charge, you can be sentenced to the penitentiary anywhere from *a range of a minimum of 20 years to a maximum of 60 years with three years mandatory supervised release*. There's no probation. There's no conditional discharge. There's no periodic imprisonment and you could be fined up to $25,000, do you understand that?

DEFENDANT: Correct.

*** 

THE COURT: I further find that Mr. Bolden understands the nature of the charges, the possible penalties, his legal rights and that he is pleading guilty voluntarily and knowingly and I accept his plea of guilty to the charge contained in count three of first-degree murder and enter judgment on the plea.

***

THE COURT: Mr. Bolden, I sentence you to 28 years in the Illinois Department of Corrections. Credit for 1,001 days." (Emphasis added.)

Defendant did not move to withdraw his guilty plea or file a direct appeal.

¶ 19                              C. Postconviction Proceedings

¶ 20    In July 2012, defendant filed a petition under the Act. He alleged that trial counsel and the trial court failed to advise him that a three-year mandatory supervised release (MSR) term would be added to his sentence. According to the petition, "[t]he only time [MSR] is remotely mentioned, it is *** in reference to the general penalties associated with first degree murder once one goes to trial." He argued that a reasonable person in his place would believe that MSR, mentioned "in relation to the minimum and maximum penalties under general circumstances," was not relevant to defendant's plea agreement. Additionally, he only became aware of his MSR

claim in January 2011. Defendant acknowledged that his petition was due on December 12, 2010, but essentially argued that he was not culpably negligent for the untimely filing because of this late discovery. Defendant's affidavit stated that he had to request the record and that he filed his petition 12 months after receiving the record in March 2011.

¶ 21 The trial court originally entered an order summarily dismissing the petition but subsequently vacated that order and appointed counsel because more than 90 days had passed. See 725 ILCS 5/122-2.1 (West 2010). The court then appointed counsel to represent defendant. On May 10, 2016, postconviction counsel submitted a certificate under Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013), reciting her actions taken on defendant's behalf. Defendant, through counsel, filed an amended petition the same day.

¶ 22 According to the amended petition, trial counsel was ineffective for failing to investigate an alibi witness, Andrea Baisten. Defendant alleged that during his first visit with trial counsel, defendant told him that Baisten, the mother of his child, could provide him with an alibi. Defendant gave trial counsel Baisten's address on a piece of paper, which was attached to the petition. During trial counsel's second visit with defendant, counsel said he would speak with Baisten. Apparently after some time had passed, Baisten asked defendant why his attorney had not contacted her. Defendant asked counsel but he did not respond. When defendant asked counsel at the guilty plea proceedings why he had not contacted Baisten, counsel said he was unable to locate her. Defendant alleged that had counsel investigated Baisten, defendant would not have pled guilty.

¶ 23 Baisten's attached affidavit stated that on the evening of December 19, 2004, defendant spent the night at her home and did not leave until the next evening, when he returned to his own home. We note that the murder apparently occurred on the morning of December 20, 2004. Additionally, Baisten stated that she told defendant to give her contact information to his

attorney, but the attorney never contacted her. Furthermore, defendant's own affidavit repeated the allegations in his petition, adding that he would have informed trial counsel if Baisten had changed her address or phone number. When trial counsel told defendant that he had only a short window in which he could plead guilty, defendant agreed to accept the State's offer of 28 years in prison. Had counsel investigated defendant's case, however, he would not have pled guilty.

¶ 24 The amended petition also argued that trial counsel was ineffective for failing to investigate Detective Sandoval and impeach his testimony with prior instances of misconduct. In 1989, Detective Sandoval had been sued for using excessive force in a 1987 incident, which resulted in a settlement. In that case, Detective Sandoval and others allegedly beat the victim with batons and fists, dragged him down the stairs and made racist remarks. In 1998, Detective Sandoval was suspended for 30 days after he pistol-whipped a juvenile on the head, requiring emergency treatment. Charges included making a false report.

¶ 25 According to defendant, such evidence would have impeached Detective Sandoval's testimony that he did not act with hostility or aggression toward defendant and did not see Detective Ayers push defendant onto a bench and injure him. Even if Detective Sandoval only stood by and watched as Detective Ayers abused defendant, the prior instances of abuse impacted the credibility of Detective Sandoval's testimony that he did not witness abuse in this case. In support of this claim, defendant attached the aforementioned affidavits, documents concerning Detective Sandoval's prior infractions and transcripts from the motion to suppress and guilty plea proceedings.

¶ 26 The State moved to dismiss the amended petition, arguing that defendant's claims were untimely and otherwise insufficient to warrant further proceedings. The State acknowledged that, accepting the allegations as true at this stage, defendant had shown that trial counsel failed to

investigate a potential alibi witness. Yet, it was unlikely that this defense would have succeeded at trial given petitioner's inculpatory statement. In addition, the new evidence regarding Detective Sandoval would not have been admissible at the motion to suppress hearing, precluding defendant's claim that trial counsel was ineffective for failing to investigate the detective. Specifically, the prior incidents were remote in time and differed from defendant's allegations in this case. The State further noted that defendant's amended petition omitted his prior argument that the trial court failed to properly admonish him regarding MSR.

¶ 27    In response, defendant argued that he was not culpably negligent in filing his petition 18 months late. According to the response and defendant's attached affidavit, he did not file his petition sooner because he did not realize that he had an issue he could raise in a postconviction petition until 2011, when another inmate informed him of that claim. Defendant stated that he would have filed his petition sooner had he known he had a potential claim.

¶ 28    On May 30, 2017, the trial court dismissed defendant's petition. Defendant now appeals.

¶ 29                                          II. Analysis

¶ 30    The Act creates a procedural mechanism for criminal defendants to assert substantial violations of their constitutional rights. *People v. Addison*, 2023 IL 127119, ¶ 18. Proceedings under the Act occur in three stages. *Id.* At the first stage, the trial court must determine whether the defendant's *pro se* petition is frivolous or patently without merit. *People v. Greer*, 212 Ill. 2d 192, 203 (1995). If the trial court finds the defendant's petition has set forth the gist of a meritorious claim or fails to act on the petition within 90 days, the petition will proceed to the second stage, at which counsel will be appointed. *Id*.

¶ 31    At the second stage, the defendant has the burden of making a substantial showing that a constitutional violation occurred. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). All well-

pleaded facts that are not positively rebutted by the record will be taken as true. *Id.* In addition, appointed counsel may amend the petition and the State may answer it or move to dismiss it as untimely. *People v. Perkins*, 229 Ill. 2d 34, 43 (2007). A defendant seeking to prevent a finding of untimeliness must allege facts showing that any delay in filing his petition was not due to his culpable negligence. *Id.* Where a petition survives to the third stage, a defendant will have the opportunity to present evidence supporting his claims at an evidentiary hearing. *People v. Morris*, 335 Ill. App. 3d 70, 76 (2002).

¶ 32                                    A. Postconviction Counsel

¶ 33    We first address defendant's contention that postconviction counsel failed to provide reasonable assistance due to the omission of his MSR claim from the amended petition. We review appointed counsel's compliance with Rule 651(c), as well as the second-stage dismissal of defendant's petition, *de novo*. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 34    A defendant does not have a constitutional right to the assistance of counsel during postconviction proceedings. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). The Act, however, provides a statutory right to counsel where an indigent defendant's petition survives to the second stage. *Greer*, 212 Ill. 2d at 203. This statutory right entitles a defendant to only a reasonable level of assistance. *Suarez*, 224 Ill. 2d at 42.

¶ 35    Rule 651(c) requires that counsel (1) consult the defendant to ascertain his contentions; (2) examine the record; and (3) "make any amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's contentions." *Perkins*, 229 Ill. 2d at 42. Appointed counsel must shape the defendant's claims into an appropriate legal form. *Addison*, 2023 IL 127119, ¶ 19. Yet, substantial compliance with Rule 651(c) is sufficient to satisfy the Act. *Profit*, 2012 IL App (1st) 101307, ¶ 18. Additionally, appointed counsel need not advance frivolous

claims on the defendant's behalf or amend the complaint to further a frivolous claim. *Greer*, 212 Ill. 2d at 205. The filing of a Rule 651(c) certificate creates a rebuttable presumption that counsel provided reasonable assistance. *Addison*, 2023 IL 127119, ¶ 19. To overcome this presumption, a defendant has the burden of demonstrating that counsel substantially failed to comply with his duties. *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 36 Here, defendant's petition was advanced to the second stage due to the passage of 90 days. His appointed counsel filed a Rule 651(c) certificate stating that she spoke with defendant by letter and phone to ascertain his claims, examined the guilty plea and sentencing transcript, examined defendant's *pro se* petition and filed an amended petition, "which adequately presents Petitioner's issues." We further note that the transcript shows she thoroughly investigated defendant's contentions by reviewing trial counsel's notes, interviewing witnesses and obtaining documents. Thus, we presume that counsel provided reasonable assistance under Rule 651(c). Defendant has the burden of demonstrating otherwise.

¶ 37 The merits of the defendant's *pro se* allegations are relevant in determining whether a defendant has rebutted the presumption that postconviction counsel provided reasonable assistance. *Profit*, 2012 IL App (1st) 101307, ¶¶ 19, 23. More specifically, the potential merit of a defendant's *pro se* claim may be crucial in deciding whether counsel was unreasonable for filing an amended petition that omitted that claim. *People v. Blake*, 2022 IL App (2d) 210154, ¶ 15. This is because the duty to shape the defendant's claims into proper form does not require counsel to advance frivolous claims. *Id*. Furthermore, our supreme court's recent decision in *Addison* did not negate this principle.

¶ 38                                    i. *Addison*

¶ 39     In *Addison*, the trial court advanced the defendant's petition to the second stage and appointed counsel, who filed a Rule 651(c) certificate stating that she had made any amendments to the defendant's *pro se* petition that were necessary to adequately present his claims. *Id.* ¶ 8. The supreme court ultimately found, however, that the particular circumstances before it rebutted that certificate. *Id.* ¶¶ 23-24, 34.

¶ 40     The supreme court observed that the petition at issue was advanced to the second stage because the trial court had found that it alleged the gist of a meritorious claim, not merely because the trial court failed to rule on the petition within 90 days. *Id.* ¶ 26. In addition, appointed counsel had determined that some of the defendant's claims were worth pursuing. *Id.* ¶ 24. Specifically, appointed counsel had filed an amended petition raising five claims. *Id.* ¶¶ 7-8. Appointed counsel omitted, however, the defendant's prior *pro se* assertion that counsel on direct appeal was ineffective for failing to raise those five claims at that time. *Id.* When the State argued before the trial court that the defendant's claims could have been raised on direct appeal, appointed counsel did not counter that argument. *Id.* ¶¶ 9-10.

¶ 41     Our supreme court observed the well-settled rule that a defendant can avoid forfeiting claims that could have been raised on direct appeal by alleging that appellate counsel was ineffective for failing to raise them. *Id.* ¶ 23. In addition, the defendant demonstrated that he too understood this, as his *pro se* petition included an ineffective assistance of appellate counsel claim. *Id.* Yet, appointed counsel "*eliminated* the necessary allegations that defendant had included in the *pro se* petition." (Emphasis in original.) *Id.* ¶ 25. Even when the State pointed out that the defendant's claims were forfeited because they could have been raised on direct appeal, appointed counsel did not make a necessary, routine amendment to the amended petition to

overcome forfeiture or otherwise respond to the State's argument in order to properly shape the claims she had found were worth pursuing. *Id.* ¶ 25.

¶ 42     Having found that postconviction counsel's performance was unreasonable, the supreme court determined that remand was required without considering whether the defendant's claims had merit. *Id.* ¶ 33. In reaching this determination, the court rejected the State's reliance on *Greer's* pronouncement that appointed counsel need not advance frivolous claims or amend the complaint to further a frivolous claim because *Greer* involved a petition that advanced to the second stage merely due to the passage of 90 days. *Id.* ¶ 26 (citing *Greer*, 212 Ill. 2d at 205).

¶ 43     We find *Addison* stands for the principle that where postconviction counsel demonstrates a belief that the defendant's claim is meritorious but fails to make a necessary, routine amendment to preserve that claim, or removes from the *pro se* petition material necessary to preserve it, the defendant may show that postconviction counsel was unreasonable without otherwise demonstrating that the claim in question was meritorious.

¶ 44     This case bears little resemblance to *Addison*. First, we note that defendant's petition advanced to the second stage because the trial court did not rule on it within 90 days. Unlike *Addison*, the trial court did not determine that the petition alleged the gist of a constitutional claim. In addition, this case does not involve the failure to make a routine amendment to preserve a claim that postconviction counsel had already determined possessed merit. Nor does it involve counsel's removal of language necessary to preserve such a claim. Instead, we are confronted with postconviction counsel's decision to omit a freestanding MSR claim. Accordingly, the claim's merit or lack thereof is relevant to postconviction counsel's decision to omit it from the amended complaint.

¶ 45                                          ii. MSR

13

¶ 46    To satisfy due process, an MSR admonishment must substantially comply with Rule 402 and the supreme court's precedent. *People v. Morris*, 236 Ill. 2d 345, 367 (2010). In addition, Rule 402 requires the trial court to admonish a defendant who is entering a negotiated guilty plea regarding the legally available sentences. Ill. S. Ct. R. 402 (eff. July 1, 2012). This includes the period of MSR. *People v. Whitfield*, 217 Ill. 2d 177, 188 (2005). In addition, "due process is violated when a defendant pleads guilty in exchange for a specific sentence and the trial court fails to advise the defendant, prior to accepting his plea, that a mandatory supervised release term will be added to that sentence." *Id.* at 195. While admonishments are intended to ensure that a defendant enters his plea intelligently, with full knowledge of the consequences, admonishments are also required to advise the defendant of the actual terms of his bargain with the State. *Morris*, 236 Ill. 2d at 366-67. "*Whitfield* requires that defendants be advised that a term of MSR will be added to the actual sentence agreed upon in exchange for a guilty plea to the offense charged." *Id.* at 367.

¶ 47    That being said, our supreme court has explicitly rejected the use of a bright-line rule requiring that admonishments "expressly link MSR during the pronouncement of the agreed-upon sentence." *People v. Boykins*, 2017 IL 121365, ¶ 21; see also *Morris*, 236 Ill. 2d at 366-67 (stating that *ideally*, an admonishment would "explicitly link MSR to the sentence to which defendant agreed in exchange for his guilty plea"). There is no precise formula (*Id.* at 345, 366), and an admonishment must be read in a practical, realistic manner (*Boykins*, 2017 IL 121365, ¶ 16). While an admonishment must use the term "MSR" in some relevant context, an "admonition is sufficient if an ordinary person in the circumstances of the accused would understand it to convey the required warning." *Morris*, 236 Ill. 2d at 366-67.

¶ 48    In this case, the following colloquy ensued after defendant's Rule 402 conference:

"THE COURT: In exchange for a plea of guilty you're going to -- on count three, which is first degree murder, under the felony murder statute -- let me have the statute -- I mean the indictment. You're going to be receiving 28 years in the Illinois Department of Corrections, is that your understanding also?

DEFENDANT: Correct.

THE COURT: And then you will get credit for 1,001 days, is that right?

DEFENDANT: Correct.

THE COURT: All right.

MR. LONGHITANO: Mandatory fines and fees will be a zero balance.

THE COURT: There are no mandatory fines and fees on first degree murder.

MR. LONGHITANO: You're right.

\*\*\*

THE COURT: All right. On a first-degree murder charge, you can be sentenced to the penitentiary anywhere from a *range of a minimum of 20 years to a maximum of 60 years with three years mandatory supervised release.* There's no probation. There's no conditional discharge. There's no periodic imprisonment and you could be fined up to $25,000, do you understand that?

DEFENDANT: Correct." (Emphasis added.)

¶ 49     An ordinary person in defendant's situation would understand that any prison term within the statutorily authorized range would be followed by a three-year MSR term. See *Boykins*, 2017 IL 121365, ¶¶ 17-18 (finding that an ordinary person in the defendant's circumstances would understand that "any term he served in prison would be followed by a three-year period of MSR

15

where the trial court informed the defendant of the sentencing range before stating that after his release, "there is a period of three years mandatory supervised release").

¶ 50    Defendant argues on appeal that the admonishment connected MSR to only the maximum permissible sentence. We find this contention to be disingenuous given defendant's own *pro se* allegations. Specifically, his *pro se* petition stated that the trial court generally mentioned MSR "in relation to the *minimum and maximum* penalties." (Emphasis added.) By defendant's own admission, he did not believe that MSR only applied to the maximum permissible sentence. But see *People v. Daniels*, 388 Ill. App. 3d 952, 954-55, 959 (2009) (finding the admonishments did not indicate that MSR would follow any prison term where the court referred to the MSR terms immediately after relaying the maximum permissible sentences); *People v. Burns*, 405 Ill. App. 3d 40, 42-45 (2010) (similar); *Cf. People v. Company*, 376 Ill. App. 3d 846, 850-53 (2007) (finding the defendant, who entered a negotiated guilty plea, would not have understood that an MSR term applied to his sentence where the trial court admonished him only that he would be subject to MSR if convicted at trial); see also *Boykins*, 2017 IL 121365, ¶ 21 (overruling *Daniels, Burns* and *Company* to the extent they recognized a bright-line rule requiring admonishments to expressly refer to MSR while pronouncing the agreed upon sentence).

¶ 51    In light of our determination that the record shows due process was satisfied, we cannot fault appointed counsel for declining to include a frivolous claim in defendant's amended petition. *Greer*, 212 Ill. 2d at 205 (stating that appointed counsel need not advance frivolous claims on the defendant's behalf or amend the complaint to further a frivolous claim); *cf. Addison*, 2023 IL 127119, ¶ 26 (distinguishing *Greer* where the petition at issue was advanced to the second stage due to its merits and counsel failed to shape the claims she found worth

16

pursuing into the proper form). Defendant cannot rebut the presumption that counsel satisfied Rule 651(c).

¶ 52                                    B. Police Misconduct

¶ 53     Next, we reject defendant's assertion that trial counsel was ineffective for failing to investigate Detective Sandoval's prior misconduct. To demonstrate that trial counsel provided ineffective assistance, a defendant must show that (1) counsel's assistance fell below an objective standard of reasonableness, and (2) the defendant was prejudiced as a result. *People v. Hall*, 217 Ill. 2d 324, 335 (2005). The failure to satisfy either prong defeats an ineffective assistance of counsel claim. *People v. Patterson*, 192 Ill. 2d 93, 107 (2000).

¶ 54     Counsel's performance is deficient where he fails to ensure that the defendant's guilty plea was entered both voluntarily and intelligently. *People v. Rissley*, 206 Ill. 2d 403, 457 (2003). Additionally, trial counsel's "[f]ailure to make use of obviously useful impeachment against a key State witness" may establish that counsel provided ineffective assistance. *People v. Vera*, 277 Ill. App. 3d 130, 140 (1995). To demonstrate prejudice, the defendant must show a reasonable probability exists that he would have insisted on going to trial rather than pleading guilty absent counsel's mistakes. *People v. Hughes*, 2012 IL 112817, ¶ 63. A bare allegation that the defendant would not have pled guilty absent counsel's deficiencies is insufficient to show prejudice. *Id.* ¶ 64. Instead, the defendant must also claim innocence or articulate a plausible defense that could have been presented at trial. *Hall*, 217 Ill. 2d at 335-36.

¶ 55     Trial counsel may be ineffective for failing to introduce evidence at a motion to suppress only where the evidence would have been admissible. *Patterson*, 192 Ill. 2d at 114. To be admissible, evidence must be relevant to a disputed issue and its prejudicial effect must not substantially outweigh its probative value. *People v. Kent*, 2017 Il App (2d )140917, ¶ 85.

17

Evidence is relevant if it tends to make a fact that is of consequence to the case more or less probable than it would be without that evidence. *People v. Pike*, 2016 IL App (1st) 122626, ¶ 33. Probability is considered in light of experience, logic and accepted assumptions about human behavior. *Id.*

¶ 56 Moreover, evidence of prior police brutality has been routinely found to be irrelevant where the defendant offers only generalized allegations of coercive conduct. *Patterson*, 192 Ill. 2d at 115. Conversely, prior allegations of brutality have been deemed admissible where they involved the same officer or officers, involved similar methods of abuse and occurred near the time of the defendant's allegations. *People v. Reyes*, 369 Ill. App. 3d 1, 19 (2006).

¶ 57 A single incident that is years removed has minimal relevance. *Patterson*, 192 Ill. 2d at 140. Yet, a series of incidents that spans several years may be relevant to demonstrating a pattern and practice of torture. *People v. Wilson*, 2019 IL App (1st) 181486, ¶ 63. Even incidents remote in time may become relevant if the party presenting the evidence presents evidence of other incidents that occurred in the interim. *Patterson*, 192 Ill. 2d at 140. While the similarity of allegations is a critical factor in determining whether evidence of police misconduct in other cases demonstrates a pattern and practice of certain behavior, "the test is not one of exact or perfect identity." *People v. Jackson*, 2021 IL 124818, ¶ 34. Instead, the question is whether "sufficient similarity between the misconduct at issue in the present case and the misconduct shown in other cases" exists so that one could fairly say that the officers' conduct conformed with a pattern and practice of behavior. *Id*. This involves a fact specific inquiry. *Id*.

¶ 58 Detective Sandoval was suspended from duty for 30 days for pistol-whipping a juvenile in 1997 as well as making a false report. The details of the latter charge are unknown. While defendant alleged here that Detective Ayers, rather than Detective Sandoval, pushed him, it is the

greatly differing method of abuse, rather than Detective Sandoval's more passive role, that defeats defendant's claim. See *People v. Harris*, 2021 IL App (1st) 182172, ¶ 56 (stating "[t]he fact that other officers may have stood by doing nothing, while McDermott committed acts of abuse, is relevant to the issue of McDermott's and the other detectives' credibility").

¶ 59     Hitting someone with a pistol is qualitatively different from Detective Ayer's alleged act of pushing defendant, not to mention the alleged use of psychological coercion and false promises of release. See *Patterson*, 192 Ill. 2d at 110 (finding allegations of other incidents were not relevant to the defendant's claim where the prior victim said that the lieutenant threatened him but did not allege that he was physically coerced). The 1997 incident and present allegations were not sufficiently similar so that one could fairly say Detective Sandoval's conduct in the present case, whether passive or active, conformed with a pattern and practice of behavior. The 1997 incident possesses limited impeachment value, if any. Consequently, it is unlikely that the trial court would have admitted this evidence at the motion to suppress hearing or that its admission would have led to the suppression of defendant's statement. It follows that trial counsel cannot have been ineffective for failing to investigate and present such evidence. See also *People v. Whirl*, 2015 IL App (1st) 111483, ¶ 80 (stating after a third-stage hearing that the question was not whether the defendant's confession was voluntary but whether the suppression hearing's outcome likely would have differed had the officer who denied harming the defendant been impeached with evidence revealing a pattern of abusive tactics).

¶ 60     The 1987 incident fares no better for defendant. First, the incident allegedly occurred 18 years before the misconduct alleged in this case and even 10 years before the suspension case. *Cf. Reyes*, 369 Ill. App. 3d at 19 (finding that three incidents of abuse that occurred in 1983, 1986 and 1993 constituted a series of events with potential relevance to establishing a claim of

pattern and abuse). Even assuming the 1987 incident could be considered part of a series of events, albeit extremely remote in time, the events were entirely dissimilar. Stated differently, this series would not establish a particular pattern and practice of misconduct.

¶ 61    Kenneth Mitchell alleged that in 1987, Detective Sandoval, along with other officers, "beat him with their batons and fists, dragged him down three flights of stairs, and racially disparaged him." This stands in stark contrast to defendant's allegation that Detective Ayers pushed him down. The two prior incidents share no similarities other than Detective Sandoval's presence for both. Additionally, the case settled. Absent findings of wrongdoing in that case, the prejudicial value of such evidence would clearly outweigh its probative value. Even if it was admitted, we find it unlikely to have changed the result for the same reasons.

¶ 62    Defendant cannot show that the prior incidents involving Detective Sandoval were admissible or would have led to a different result at the motion to suppress hearing had they been admitted. See *Whirl*, 2015 IL App (1st) 114853, ¶¶ 102-03 (finding the officer's presence for numerous occurrences of torture would support a finding that the officer was directly involved in a pattern of torture and was relevant to the credibility of that officer's denial that he had tortured the defendant). Accordingly, trial counsel was not ineffective for failing to investigate, discover and present this evidence.

¶ 63                                    C. Untimely Alibi

¶ 64    Finally, we find the trial court properly dismissed defendant's claim that trial counsel was ineffective for failing to contact Baisten.

¶ 65    Defendant concedes that he should have filed his petition by December 12, 2010, three years from the date on which he pled guilty. 725 ILCS 5/122-1(c) (West 2010). As defendant

20

also acknowledges, he filed his petition on July 9, 2012, approximately 18 months late. Defendant has failed to show that he lacks culpable negligence with respect to this claim.

¶ 66     In order for a defendant to escape dismissal due to the untimeliness of his petition, he must allege sufficient facts to demonstrate that he was not culpably negligent. *People v. Lander*, 215 Ill. 2d 577, 586 (2005). Culpable negligence involves the indifference to or disregard of consequences. *Rissley*, 206 Ill. 2d at 419. Additionally, culpable negligence, which is akin to recklessness, contemplates something more than ordinary negligence. *People v. Paleologos*, 345 Ill. App. 3d 700, 708 (2003). Thus, the exception covers delay as "an unavoidable consequence of the late discovery of a claim." *People v. Davis*, 351 Ill. App. 3d 215, 218 (2004). Neither ignorance of legal rights nor the time requirements for filing a petition will excuse untimeliness, however. *Lander*, 215 Ill. 2d at 588-89. Whether a defendant was culpably negligent depends on when the claim was discovered as well as how promptly he acted after discovery. *Davis*, 351 Ill. App. 3d at 218.

¶ 67     According to defendant, he has at all relevant times known that Baisten could and would provide him with an alibi. Thus, he gave trial counsel Baisten's contact information. Yet, defendant has known since before December 12, 2007, the day on which he pled guilty, that trial counsel never contacted her. Neither his pleadings filed in the trial court nor his briefs filed in this court have provided any reason why he could not have filed a timely petition raising this claim. Thus, we find that no such reason exists. See *Perkins*, 229 Ill. 2d at 50-51 (finding that although appointed counsel made a meritless argument that the delay was not due to the defendant's culpable negligence, this did not show "that there was some other excuse counsel could have raised for the delay in filing" and the court could not "assume that there was some other excuse counsel failed to raise for the delay in filing"); *People v. Gerow*, 388 Ill. App. 3d

21

524, 530 (2009) (finding that the defendant's 27-month delay, without any explanation had to be attributed to the defendant's culpable negligence); see also *People v. Johnson*, 154 Ill. 2d 227, 241 (1993) (finding that ordinarily, a trial court may reasonably presume when ruling on a motion to dismiss a petition not supported by documentation that appointed counsel made a concerted effort to obtain such documentation but was unable to do so).

¶ 68    Accordingly, the trial court properly dismissed this claim.

¶ 69                                III. Conclusion

¶ 70    Defendant received the reasonable assistance of postconviction counsel. Additionally, he cannot demonstrate that trial counsel was ineffective for failing to investigate and present evidence of police misconduct or that his ineffective assistance of counsel claim based on his alibi was unavailable sooner.

¶ 71    For the foregoing reasons, we affirm the trial court's judgment.

¶ 72    Affirmed.